THE SOUTHERN EXPRESS COMPANY *vs.* FRINK *et al.*

1. An express company employed a messenger and required him to give bond. The bond provided that he should "well and truly perform all the duties required of me in any position or place to which I may be assigned in said employment, and well and truly account for all money and property of every description which may come into my possession or control, or for which I may have given my receipt, by reason of said employment, and make good all loss or damage which may happen to such money or property while under my control, for which I may be legally responsible, and indemnify and save harmless the said company from all liability on account of my fault or neglect :"

*Held,* that as between the company and the messenger his liability was not that of a common carrier, but that of an agent, and depended on his diligence or negligence.

2. A charge not founded on the evidence and likely to mislead the jury, was error.

3. Where one employs an agent who is already in the service of another principal, with full knowledge of his first employment, and concurrently therewith, the second contract must be construed in the light of the duties imposed by the.first, and the agent will not be liable to the second employer for a failure of duty if caused solely by the obligations imposed by the first employment.

(*a.*) The issues in this case were not fully and fairly submitted.

Master and Servant. Principal and Agent. Common Carriers. Damages. Negligence. Charge of Court. Be-

fore Judge PATE.   Pulaski Superior Court.   November Adjourned Term, 1880.

To the report contained in the decision it is only necessary to add the following :

Frink, who was a conductor on the Hawkinsville branch of the Macon & Brunswick railroad, also accepted employment under the Southern Express Company; his duties were those of a messenger—to carry packages from Cochran to Hawkinsville, and *vice versa*, etc.   He gave a bond to the express company, the provisions of which are sufficiently stated in the first head-note.   On September 16th, 1879, he received an express package containing $3,000.00, to be carried from Cochran to Hawkinsville.   He failed to deliver it, and the company sued on his bond.   The evidence as to his diligence was conflicting.   Plaintiff sought to show that the package was received by Frink about 2:30 P. M., and put in the safe which he had in the baggage car; that he left the car open and the safe unprotected, and went with the engine some miles away after water, returning just before sundown ; that he then took no precautions, his only precaution before leaving the first time being to tell one Carroll, who was the baggage-master, and with whom he divided the salary paid him by the express company, to lock the car; that after his return with the engine he went up town and remained there eating and drinking and playing cards until some time in the night, when it was time for the train to leave ; and that he showed the key of the safe to one or more parties, remarking that it was a check for money, all of which was contrary to the rules of the company ; that he never paid any attention to the package until near Hawkinsville, after 10 P. M., when he went to the safe to get it and found it gone.

Defendants insisted that, under orders from the railroad company, Frink was compelled to go with the engine for water, returning before sundown ; that he did not receive

the instructions as claimed by plaintiff, and that he was not negligent. The facts are sufficiently stated in the decision.

The jury found for defendants. Plaintiff moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and the evidence.

(2.) Because the court erred in charging the latter clause of section 2184 of the Code, to-wit: " In cases where the power is coupled with an interest in the agent, unreasonable instructions detrimental to the agent's interest may be disregarded."

[The court charged the entire section together.]

(3.) Because the court refused to charge the following written request: " That the defendant, Frink, having voluntarily and for hire accepted the position of agent of the express company, and having voluntarily assumed the duties and responsibilities and liabilities of such agent to plaintiff, his being in the employ of the railroad did not in any way increase or diminish his duties and obligations and liabilities to plaintiff."

(4.) Because the court erred in the following charge: " Now it is claimed here on the part of the defendants that he (Frink) was to obey the instructions of the Macon & Brunswick railroad ; therefore it is claimed that it came in conflict with the duties as express agent and messenger. Well, gentlemen, you have heard the testimony upon that question, and it is for you to determine under the facts sworn to and proved whether it was necessary for him (Frink), as claimed here, that he was compelled to leave Cochran on the engine, whether it was necessary for him to do that or not—whether the instructions from the railroad requires that he should do that, and that is the question for you."

The motion was overruled and plaintiff excepted.

ROBERTS & DELACEY; JACOB WATSON ; R. F. LYON, for plaintiff in error.

v 67—14

KIBBEE & MARTIN; C. C. RYAN; HARRISON & PEE-PLES, for defendants.

JACKSON, Chief Justice.

The Southern Express Company brought suit against their agent and the sureties on his bond, to recover three thousand dollars entrusted to him at Cochran for delivery at Hawkinsville, and which he failed to deliver. The jury found for defendants and the company excepted to the refusal of the court to award a new trial.

1. The liability of the agent of the company and his sureties to the company turns on the contract between them, and that contract is the bond on which the suit is brought. The counsel for plaintiff in error contended that the liability of the agent is the same as that of a common carrier; that he was employed by the company to carry goods, money, etc., from Cochran to Hawkinsville regularly on the Macon and Brunswick branch railroad between those points, and thus became a common carrier under section 2066 of the Code, and therefore, under the same section, no excuse availed him but the act of God or that of the public enemy.

It was conceded that his liability and that of his sureties was measured by the obligation they signed, but it was insisted that by the terms of that obligation the legal liability of the agent as a common carrier was not varied, but was fixed to be that of a common carrier.

The liability fixed in the bond is in these words: "I will at all times well and truly perform all the duties required of me in any position or place to which I may be assigned in said employment, and well and truly account for all money and property of every description which may come into my possession or control, or for which I may have given my receipt, by reason of said employment, and make good all loss or damage which may happen to such money or property while under my control,

for which I may be legally responsible, and indemnify and save harmless the said company from all liability on account of my fault or neglect." It is urged that the words "for which I may be legally responsible" make the agent liable as a common carrier, and that he can protect himself from incurring it only by the act of God or the public enemy. We cannot so hold.

The following words, "and save harmless the said company from all liability on account of *my fault or neglect*," would be without meaning if such construction were put on the former words. The liability is not to indemnify the company against all accidents and the fault of the whole world, except the acts of the Almighty and of the enemies of the State, but it is to indemnify the company for any loss incurred by reason of "*my fault or neglect*," the agent's own fault or neglect, and that of nobody else. If the parties had intended to bind the agent as a common carrier, how easy to have said so in the bond. The truth is that the bond is given, not as a common carrier at all, or in the capacity of any sort of carrier, but as agent of the express company in any business in which that company might place him; for the bond recites that "this obligation shall not be impaired by a change of place, position or duties of said James S. Frink's employment;" and also that "whereas James S. Frink is about to be employed by the Southern Express Company for a period that may be terminated by said company at will. without notice, now, therefore, know all men by these presents, that I, the said James S. Frink, in consideration of the said employment, and the compensation which I am to receive from said company for my services therein, do hereby covenant with said company and bind myself, my heirs, executors and administrators, that I will at all times well and truly perform all the duties required of me *in any position or place* to which I may be assigned in said employment." His position might have been changed to that of a clerk or a stationary agent, and yet this obli-

gation would bind him. How and to what extent? Surely not as a common carrier; for he would then carry nothing, but as the agent of the company for any loss incurred by his fault or neglect. The common carrier is the Southern Express Company; to that corporation the public looks for security. It is bound for every loss, except it befall by act of God or the public enemy; but the agents of this corporation are bound only by the terms of their respective obligations—their contract with the company—and that obligation in this case is limited to losses occasioned by the fault or neglect of this agent by the very terms of the contract.

The question, therefore, to be determined is, was he at fault or neglectful of his business when this package of $3,000.00 was taken from the box or safe in the baggage-car of the Macon & Brunswick branch train while it stood at Cochran for several hours in the afternoon and night, until ten or eleven o'clock in the night? He was the conductor of the Macon & Brunswick Railroad Company as well as the agent of the express company. He left the baggage car and box with this money in it, to go to Buzzard Roost, a station twelve miles off, on the engine with the engineer after water; he did not lock the car himself when he left, but told Carroll to do so, who was baggage-master to the railroad company, but also the agent or servant of Frink, receiving half the wages the express company paid him. There was no baggage in the baggage-car, and nothing but this box, so far as the record shows; a boy, the servant of Frink and Carroll, had the key to this baggage car and slept in it. When Frink returned from the water expedition he did not examine the car and box to ascertain if all was right; nor did he look at it or open it till he was close to Hawkinsville, but left the box with the money where this boy had access till ten o'clock at night, without opening it once; he was about the town drinking beer and eating oysters and playing cards; he showed the key of the box where this money was to sev-

eral persons, or in their presence, and said it was a check for money, but not his money, and that it was the key of that box. The legal question is, did he use that diligence about this large sum of money, thus so long in this box, which was a common iron box with a common key to it, which a prudent man would have taken of it had it been that prudent man's property? Code, §§2185, 2061.

It seems that the express company knew of his employment by the railroad company when it employed him, and if it was his duty to leave the train of cars and go for water on the engine alone with the engineer, and without the baggage car, it may excuse that absence from his charge; but conceding this, was he excusable for all that he did, and all that he did not do, after his return and until ten o'clock that night?

The question of negligence on the facts is peculiarly for the jury, and we do not wish to take its unbiased consideration from them. Therefore, we do not express any opinion on the facts made here, further than to repeat the question at issue, would a prudent man have acted as this agent did had his own money been in that box in the baggage car?

2. We will say further, that the case required a clear and full presentation of this issue before the jury by the court, without the slightest cloud or omission on his part; and on examining the exceptions taken to the charge in the motion for a new trial, we cannot say that it was so presented.

One charge complained of was certainly erroneous, and that consists in giving to the jury the latter part of section 2184 of the Code, which declares that "in cases where the power is coupled with an interest in the agent, unreasonable instructions detrimental to the agent's interest may be disregarded." The power of this agent to act in this business was not coupled with any interest in him in the sense of the statute, and the charge may have misled, and probably did mislead, the jury.

The instructions which the plaintiff insisted he received were very stringent. It is true that it is disputed that he did receive them, but the plaintiff had the legal right to have the case made by his proof put before the jury to be considered by them. Among these instructions are those which require him to inspect the box immediately before he went to meals and immediately on his return; to drink no intoxicating liquors of any sort; never to show or talk about the contents of the box; never to let the key pass from his possession, lest opportunity might arise to take a wax impression; to note that the iron box was not absolutely safe, but must be watched as carefully as leather trunks or wooden boxes; to exercise the same care and vigilance on every trip as if he knew of a premeditated robbery; to note that he was watched by skillful and desperate thieves, and to keep these instructions ever on his memory.

Now when the court told the jury that this agent might disregard these instructions if unreasonable, provided his power was coupled with an interest, we cannot say that the plaintiff was not hurt. Jurors might hold them very unreasonable, and might think that the agent did have an interest in the duty before him; but certainly he had no interest in the sense of the law, and this was not a case in which this charge could be given as its law.

3. Whether this agent of the express company could shield himself behind his prior contract with the railroad company at all, would turn on the question whether the express company knew of his employment, and in the light of this knowledge employed him. Did they know that fact? The charge of the court is not explicit that the express company must know it, before that company could be legally affected at all by it. If the express company knew it, it might be questioned whether then it could be affected by a prior engagement of their agent to another, unless stipulated for in the contract of employment. But we think the better rule would be that then

it would be the duty of the last employer to ascertain what the agent had to do for his first employer, and then, if he employed him, the law, reason and common sense, would construe the contract in the light of the conflicting duties of the first engagement, and hold the agent faultless if his only fault or negligence was caused by the duties of the prior engagement. Practically in this case, therefore, the question as to the neglect of this box, *while off for the water*, turns on whether it was his duty as conductor to go at all with the engineer for the water, and if it was his duty, did he not have the power as conductor, to take the baggage car with him, for if he did then he would hardly be considered as acting as a prudent man in respect to his own property in leaving the baggage car and box behind. But other issues of fault or neglect after his return from Buzzard Roost, and during the hours he was about town in Cochran, turn on the legal principles first laid down, and are not affected by the prior engagement.

We think that these issues should have been submitted fairly and squarely to the jury in respect to knowledge or ignorance of the company of his prior engagements, and in respect to what his duties as conductor required him to do, as well as in respect to the law applicable to his fault or neglect while at Cochran, as alleged against him.

On the whole case, we think a new trial should be had, especially on the ground of error in the court in the charge in respect to the power of the agent when coupled with an interest, and some uncertainty and inaccuracy on the subject of the conflicting duties of this agent in the employment of two distinct corporations. The other grounds were properly ruled, or did not hurt.

Judgment reversed.