FRINK *et al. vs.* THE SOUTHERN EXPRESS COMPANY.

1. The verdict is sustained by the evidence.
2. Where an express agent was entrusted with a package of money, and he claimed that the only instructions he had received from his principal as to the care of the package were to put it in the safe, lock it and put the key in his pocket, on the trial of a case against the agent and his sureties by the principal, brought to recover from them for the loss of the package by reason of alleged negligence of the agent, and for which loss the principal had been compelled to reimburse the consignor, it was not error to charge that,

v 82-3

whether the agent had such instructions as those mentioned or not, it was his duty to exercise reasonable care and diligence in looking after the money.

(*a*) The instructions mentioned were doubtless given to the agent to prevent his carrying the packages about on his person or leaving them carelessly in the depot, or the like; but it certainly was not contemplated that his compliance simply with these instructions should relieve him of the entire responsibility of guarding the package after it was placed in the safe.

3. Testimony of a witness that plaintiff's division superintendent, who had charge of this suit, had stated to the witness that he had proof to show that a certain person had taken the money, was properly held to be inadmissible, it being hearsay. . It was also properly held that defendants could not be allowed to show, by the superintendent himself, that the superintendent had made such a statement; and that the superintendent could not be allowed to testify whether he did not say that he had evidence enough to convict a certain person, and whether it was not true that he had such information, and if he did not say that such person took the money, and if plaintiff was not satisfied that such person had taken it; the evidence sought to be introduced being only the opinion of the superintendent as to the guilt of such person.

4. The bond signed by the sureties in this case recited that it should not be impaired by a change of place, position or duties of the agent, or by his temporary absence from duty. It appeared from the evidence that the person to whom the safe-key was given during the agent's absence was one of the sureties, one Peacock being the other. There were also facts in evidence tending to show that Peacock must have known how the business was carried on in the car, part of which was used by the express company, the number of compartments therein, and that the safe was kept in the baggage compartment thereof. Peacock filed special pleas, claiming that he had been released by the act of the plaintiff in giving the agent a vacation and putting another in his place during the vacation, etc., and also that he was released because plaintiff had failed to provide a separate compartment in the car secured by a lock, etc.

*Held* that, under the facts, it was not error to charge that one who signs a contract as surety agrees to take such risks as he knows or can reasonably find out by proper inquiry that he is to bear, and that under the terms of the bond, the plaintiff and its agent had the right to agree that the agent might be temporarily absent from his duties, and that if the surety signed the bond with the understanding that when the agent was absent from duty some one

would be put in his place to perform such duty, he (the surety) could not set up that he was released by reason of that having been done, and that if he knew it or could have found it out by reasonable inquiry, he could not set it up.

5. The condition of this bond was, that the agent should account for all the money which might come into his possession or control by reason of his employment, and make good all loss or damage which might happen to such money while under his control for which he might be legally responsible, and indemnify and save harmless the express company from all liability on account of his fault or neglect. Therefore when money had been received by him and lost on account of his negligence, and a demand was made upon him and his sureties to pay it in accordance with the bond, and they refused to do so, it became a debt due by him and his sureties to the plaintiff. When the demand was not complied with, and the agent and his sureties delayed the plaintiff by litigation from collecting its money, it was entitled to damages for such delay, and the law gives such damages both as against the agent and his sureties by way of interest from the date of the demand. The bond in this case stipulated for the sum of $3,000 only, and the value of the package lost was $3,000. It was error to instruct the jury that plaintiff was entitled to interest from the time the money was lost. The record does not show that any demand was ever made upon either. When no demand has been made, the plaintiff is entitled to interest only from the time the writ was served on the defendants. Interest having been calculated by the jury from the time the money was lost to the date of the verdict, it is directed that the interest found up to the service of the writ be written off, and that interest be calculated from the time of the service to the judgment.

February 11, 1889.

Verdict. Principal and agent. Negligence. Evidence. Principal and surety. Bonds. Interest. Practice. Directions. Before Judge Gustin. Bibb superior court. May term, 1888.

Reported in the decision.

Bacon & Rutherford and J. H. Martin, for plaintiffs in error.

Lyon & Estes, *contra.*

SIMMONS, Justice.

The Southern Express Company sued Frink as principal, and Peacock and Carroll as sureties, on a bond given to the plaintiff by Frink, conditioned for the faithful discharge of his duties as express messenger, etc. It is alleged in the declaration that there had been a breach of this bond, by reason of the failure of Frink to carry and deliver safely a certain package containing $3,000, which had been entrusted to him by the plaintiff, and for the loss of which the plaintiff was compelled to recompense the consignor. On the trial of the case, the jury returned a verdict for the plaintiff against the principal and sureties, for $3,000 and interest from the date the money was entrusted to Frink. The defendants made a motion for a new trial, on thirty-one grounds, which motion was overruled by the court, and the defendants excepted. These numerous grounds, when analyzed, are, in substance: (1) That the verdict was contrary to the evidence, to the weight of evidence, and to law; (2) that the court erred in charging the jury that, whether Frink had instructions or not, his duty was to exercise ordinary care in looking after the safety of the money; (3) that the court erred in not allowing the defendants to prove certain admissions of Dempsey, the division superintendent of the express company, to Peacock, one of the defendants; (4) that the court erred in its instructions to the jury as to what acts of the creditor would release the surety; and (5) that the court erred in charging that if the jury should find for the plaintiff, they should add interest from the time the money was lost.

1. We have carefully read the evidence in the record, and we think it is sufficient to sustain the finding of the jury. There is no controversy about the loss of the

money. The defendant, Frink, was conductor·on the Cochran and Hawkinsville branch of the Macon & Brunswick railroad, as well as express messenger. The officers of the railroad company had consented for the express company to employ him as messenger. When he reached Cochran from Hawkinsville, about two o'clock in the afternoon of September 16th, 1879, this package of money was delivered to him. He immediately put it in the safe furnished him by the express company, locked the safe and put the key in his pocket. This safe was kept in a car which had three compartments, one for the white passengers, one for the colored and the other for baggage. Carroll, one of the sureties on Frink's bond, was the baggage-master, and had the key to the baggage compartment. There was also a colored man belonging to the crew of the train, employed by Frink and Carroll to assist them, who had access to the car. After receiving the money, Frink telegraphed to the agent at Hawkinsville that he had the money, and for that agent to meet him on the arrival of the train at Hawkinsville. Under orders from the railroad officials, he went with the engine twelve miles to procure water, and returned to Cochran about sundown. When he started with the engine, he directed Carroll and the colored man above referred to to lock the baggage-car. This car was left on the track some distance from the depot, and remained in that position from about two o'clock in the afternoon until about ten o'clock at night. When Frink returned from the water station, he did not go into this car and examine his safe, nor did he examine to see whether the car was locked or not. He simply went by the car and saw that the door was closed. He then went on into the town, some three or four hundred yards off, and remained there until about half past nine o'clock at

night, when he returned to the depot and got his train ready; and at about ten o'clock started for Hawkinsville. He did not examine the safe during all this time, and did not miss the money until he arrived at Hawkinsville, when he unlocked the safe and discovered that it was gone. It was also in proof that about that time, there were many gamblers and roughs in the town of Cochran. The safe was simply a small iron box, with an ordinary lock and key.

Under this state of facts, we think the jury were justified in finding a verdict against Frink and his sureties. Whether it was his duty or not, in the exercise of ordinary diligence, to carry this car along with the engine to the water-tank, it was certainly his duty, when he returned, to look after this money more closely than he did. It seems to us that no prudent man, knowing the surroundings as Frink must have known them, would have left that amount of money in the car seventy-five yards from the depot, no house being near by, from sundown until half past nine o'clock at night. While it was not his duty to neglect the business of the railroad, still, when he was not engaged in its business, it was his duty to look after this package, either in person or by some agent in whom he had confidence. It amounted almost to gross negligence for him to leave this car and his safe for so long a time at night, to go up town and play cards and visit drinking saloons. Would any prudent man have left three thousand dollars of his own money in that condition for such a length of time? We apprehend not. There was no error in overruling this ground of the motion. This seems to have been the view taken by this court when the case was here before. *Southern Express Co. vs. Frink,* 67 *Ga.* 201.

2. But it is urged in behalf of Frink, that having car-

ried out the instructions of Bowles, the agent of the express company, by placing the package of money in his safe immediately on the receipt thereof, he had fully complied with his duty, and if the money was afterwards lost, Frink would not be liable. The court below charged the jury, upon this point, that whether Frink had such instructions or not, it was his duty to exercise reasonable care and diligence in looking after the money; and this charge is complained of by the plaintiffs in error. We think the charge of the court upon this point was correct. The instructions of the agent certainly did not embrace the whole duty of Frink under the circumstances of this case. The special and only instructions which he says he received were, that when he received a money package to put it in the safe, lock the safe and put the key in his pocket. They were doubtless given to him to prevent him from carrying the packages around on his person, or leaving them carelessly in the depot, or the like, but it certainly was not contemplated that his compliance simply with these instructions should relieve him of the entire responsibility of guarding the package after it was placed in the safe. He would not have been justified in leaving that car containing the safe a mile from any habitation; and we do not think he was justified in leaving the car seventy-five yards away from the depot, and equally as far from where any person dwelt, without a guard, or without seeing that the car door was locked. We agree with the judge who tried this case, that the putting of the money in the safe and locking the safe was not the whole duty of the defendant. He was still bound to exercise ordinary care and diligence in taking care of the money after it was placed in the safe.

3. During the progress of the trial, the defendants proposed to prove by Peacock, that Dempsey, the plain-

tiff's division superintendent, who had charge of this suit, had stated to the witness that he had proof to show that a certain person had taken the money. The defendants also proposed to prove by Dempsey, that he had said to Peacock that he had evidence enough to show who had taken the money; and proposed to ask Dempsey if he did not say to Peacock that he had evidence enough to convict Carroll of taking the money, and if it was not true that he had sufficient information to convict Carroll of taking the money, and if he did not say that Carroll took the money, and that the express company was satisfied that Carroll had taken the money. The court declined to allow this testimony, and error is assigned thereon. We see no error in this ruling. The declarations of Dempsey which the defendants proposed to prove by Peacock, were hearsay; and what the defendants proposed to prove by Dempsey himself was only the opinion of Dempsey as to the guilt of Carroll, and there was no error in excluding it from the jury. A statement of the proposition is a demonstration of it.

4. Peacock, one of the sureties, filed several special pleas, claiming that he had been released by the act of the express company in giving Frink a vacation of one month and putting Carroll in Frink's place during that period, which was done without Peacock's knowledge or consent or subsequent ratification; and that this increased Peacock's risk as surety, and exposed him to greater liability, for it gave to Carroll an opportunity of becoming acquainted with the safe, the only repository of the express company; that the express company gave the key of the safe to Carroll, thereby affording him the opportunity of having a duplicate key made, and that the safe was not broken open, but was unlocked by a duplicate key; that Carroll was the baggage-master on

that car, and had access to the car.   Peacock further
pleaded that when he signed the bond, he did so rely-
ing upon the good faith of the plaintiff, and the duty
and obligation resting upon said plaintiff to furnish
said Frink with a safe place for the keeping of valuable
packages ; that it failed to provide a separate compart-
ment in the car, secured by a lock, and to which Frink
alone could have access ; and that the express company,
although knowing that Frink could not remain all the
time watching said safe, failed to provide for the watch-
ing of the safe during Frink's absence ; and that its
failure so to do exposed the surety to a greater risk and
liability than he would otherwise have been exposed to.
On these points the judge in the court below charged
the jury as follows :

" A man signing a contract as surety signs it with his
eyes open, or with the duty to have his eyes open at the
time.   He signs it with reference to the state of affairs
as they may exist.   At the time he signs that contract,
he agrees to take certain risks as he knows or can rea-
sonably find out by proper inquiry that he is to bear.
He cannot sign a paper and afterwards, on a loss occur-
ring, say, 'I did not know the condition of things at
the time I signed it.' "   He also charged that " the ex-
press company and Frink had a right to make an agree-
ment that Frink might be temporarily absent from his
duties, and it is a question for the jury to inquire
whether, when the surety signed the bond, he did it
with the understanding that some one should be put in
the place of Frink during that temporary absence ";
that " if the surety signed the bond with the under-
standing (he having signed it agreeing to allow tempo-
rary absence on the part of Frink) that when Frink was
absent from duty some one would be put in his place
to perform those duties, then he cannot set up his de-

fence that he was released by reason of that having been done. If he knew it or could have found it out by reasonable inquiry, he cannot now set that up as a defence." The same principle was given in charge in regard to the other plea. These charges are complained of as erroneous. We think the propositions laid down by the trial judge are sound. It appears from the evidence that Peacock had lived and carried on business in the town of Cochran for a considerable length of time before he signed this bond. He had traveled on this train, and in this particular car with Frink. He must have known how the business was carried on in that car, the number of compartments therein, and that this safe was kept in the baggage compartment of the car. The bond which Peacock signed recited that it should not be impaired by a change of place, position or duties of said Frink, or by his temporary absence from duty. It also appears that Carroll, to whom the safe-key was given during Frink's absence, was a co-surety with Peacock. Under this state of facts, we see no error in the charges complained of.

In the case of Magee *et al. vs.* Manhattan Life Ins. Co., 92 U. S. Rep. 98, Mr. Justice Swayne, delivering the opinion of the court, says: " A surety is ' a favored debtor.' His rights are zealously guarded both at law and in equity. The slightest fraud on the part of the creditor, touching the contract, annuls it. Any alteration after it is made, though beneficial to the surety, has the same effect. His contract exactly as made is the measure of his liability; and if the case against him be not clearly within it, he is entitled to go acquit. But there is a duty incumbent on him. He must not rest supine, close his eyes, and fail to seek important information within his reach. If he does this and a loss occurs, he cannot, in the absence of fraud on the part of the creditor, set up as a defence facts then first learned

which he ought to have known and considered before
entering into the contract. *Vigilantibus non dormientibus
leges subserviunt.* Where one of two innocent parties
must lose, and one of them is at fault, the law throws
the burden of the loss upon him."

5. The next and last ground which we shall notice is,
that the court below erred in its charge to the jury as
to the recovery of interest upon the penalty in this
bond. The court instructed the jury that if they should
find for the plaintiff, they should find interest upon the.
amount from the time Frink, the principal, lost the
money. Counsel for the plaintiffs in error insist that
the plaintiff is not entitled to recover from the principal
or the sureties more than the penalty of the bond; that
the penalty named in the bond is the extent of the
liability thereon, especially so as to the sureties. For a
long time this has been a controverted question, both in
the courts of England and of this country. The courts in
England have decided the question in different ways,
one court holding that no more could be recovered than
the penalty on the bond, another holding that interest
and costs might be recovered in addition to the penalty.
We have spent a great deal of time in the examination
of authorities upon this subject, and we think that the
weight of authority is, that in this class of actions, and
under the circumstances disclosed by this record, the
plaintiff is entitled to recover, in addition to the penalty
named in the bond, interest against the surety as well as
against the principal from the time of the demand upon
them. This suit was for $3,000, the exact amount of
the penalty in the bond. The condition of the bond
sued on was, that Frink should well and truly account
for all money which might come into his possession or
control, or for which he might have given his receipt by
reason of said employment, and make good all loss or

damage which might happen to such money or property while under his control, for which he might be legally responsible; and indemnify and save harmless the said company from all liability on account of his fault or neglect. As before remarked, Frink did not deny having received the money, or that it was lost whilst in his possession; nor was it denied that the express company had paid the consignor the $3,000. When, therefore, the money had been received by Frink and lost on account of his negligence, as the jury has found, and a demand was made upon him and his sureties to pay said money in accordance with the condition of his obligation, and they refused to do so, it became a debt due by Frink and his sureties to the plaintiff. If Frink had then paid the money, or in case of his default his sureties had paid it when demanded of them, in accordance with the condition of their obligation, of course no interest would have accrued thereon. When the sureties refused to pay the money on demand, and by litigation delayed the plaintiff several years from the collection of its money, the plaintiff was entitled to damages for such delay, and the law gives the plaintiff such damages by way of interest from the demand. Brandt on Suretyship and Guaranty, §93, says: "It may be a reasonable doctrine that a surety, who has bound himself under a fixed penalty for the payment of money, or some other act to be done by a third person, has marked the utmost limit of his own liability. But when the time has come for him to discharge that liability, and he neglects or refuses to do so, it is equally reasonable, and altogether just, that he should compensate the creditor for the delay which he has interposed. The question, in short, is not what is the measure of a surety's liability under a penal bond, but what does the law exact of him for an

unjust delay in payment, after his liability is ascertained and the debt is actually due from him."

Murfree on Official Bonds, §689, says : "It is very clear, as a general rule, that judgment cannot be rendered against sureties for a greater amount than the penalty of the bond. Sureties cannot be held liable for interest beyond the penalty of the bond, except for such interest as accrued from their own default in unjustly withholding payment after having been notified of the default of their principal." See also Graham *vs.* Bickham, 1 Am. Decis. 328, and note on page 338 ; Mower *vs.* Kip, 29 Am. Decis. 748. In Brainard *vs.* Jones, 18 N. Y. Rep. 35, the court hold that, "the recovery against a surety in a bond for the payment of money is not limited to the penalty, but may exceed it so far as necessary to include interest from the time of the breach." "So far as interest is payable by the terms of the contract, and until default made, it is limited by the penalty, but after breach it is recoverable, not on the ground of contract, but as damages, which the law gives for its violation."

In Lyon *vs.* Clark, 8 N. Y. Rep. 148, it is held, that "where the sum actually due by the condition of a bond without interest equals the penalty, interest can be recovered as damages beyond the penalty." In this case Willard, J., discusses the cases decided up to that time, and draws the above conclusion. See also United States *vs.* Hills, 4 Myer's Fed. Decis. §495, same case 4 Cliff. Rep. 618 ; Curtis *vs.* United States, 100 U. S. Rep. 119. These authorities, we think, fully sustain the doctrine above announced. For the contrary view, see Fraser *vs.* Little, 13 Mich. 195, in which Campbell, J., discusses this question and reviews the authorities.

We think, however, that the court erred in instructing the jury that the plaintiff was entitled to interest

from the time the money was lost.    Under the authorities above quoted, the plaintiff was only entitled to interest from the time the demand was made upon the principal and surety.    The record in this case does not show that any demand was ever made upon either. When no demand has been made, the plaintiff is only entitled to interest from the time the writ was served upon the defendants.    Curtis *vs.* U. S., *supra*, and U. S. *vs.* Hill, *supra*.    In this case interest was calculated by the jury, under the instructions of the court, from the 16th of September, 1879, to the date of the verdict; whereas it should have been calculated only from the time the writ was served upon the defendants.    We direct therefore, that the interest found by the jury from the 16th of September, 1879, up to the service of the writ upon the defendants, be written off from the verdict and judgment, and that interest be calculated from the time of the service to the judgment.

Judgment affirmed, with direction.