J. F. McMULLEN *et al.* v. THE WINFIELD BUILDING AND LOAN ASSOCIATION.

No. 11,994.   (67 Pac. 892.)

SYLLABUS BY THE COURT.

1. SURETIES— *Terms of Bond — Prospective and Retrospective Liability.* Where the terms of a bond clearly show that it was intended to be retrospective as well as prospective, sureties may be held liable for defaults occurring before the execution of such bond.

2. ———— *Officer's Bond — Term of Office — Date of Bond.* A bond of an officer recited that he had been elected for the year beginning January 1, 1885, and ending December 31, 1885, and had accepted the office, and it was conditioned that if he should faithfully perform the duties of his office "during said year" the bond should be void and of no effect, but otherwise should remain in full force and effect. The officer was not elected until some time after the first of the year, but had held successive terms and been continually in office for several years before and after 1885. *Held*, that the surety made himself responsible for the defaults of the entire year of 1885.

3. ———— *Evidence of Time of Misappropriation — Burden of Proof.* Presumably, money which came into the officer's hands and should have been there was still in his possession, and the burden was on the surety to prove that the funds presumably in the hands of his principal had been misappropriated before he became liable on the bond.

4. ———— *Limit of Liability — Allowance of Interest.* While the penalty of the bond fixes the limit of liability of the surety at the time the liability arises, yet if the principal or surety

McMullen v. Loan Association.

fail to discharge that liability when it matures, interest may be allowed on the amount from the time the liability arises, even if the amount of recovery shall exceed the penalty.

5. ———— *Limitation of Action—Fraudulent Concealment of Defalcation.*   Where an officer and agent misappropriates money entrusted to him, and fraudulently conceals his defalcations, the statute will not begin to run until the discovery of the fraud and of the breach of the condition of the bond.

6. ———— *Identity of Liability of Principal and Surety—Concealed Fraud of Principal.*   The liability of the principal is that of the surety, and where the statute of limitations does not begin to run because of the concealed fraud of the principal, the surety cannot invoke the aid of the statute on the ground that he was innocent of the fraud.

7. ———— *Failure of Obligee to Detect Defalcation — Recovery.* Where the officer bore a good reputation and was generally believed to be honest by the obligees in the bond, and they had no knowledge or notice of unfaithfulness, the fact that the books were open to their inspection and that they failed to detect the defaults which a close examination might have disclosed will not defeat a recovery on the bond, if they acted in good faith toward the surety.


Error from Cowley district court; W. T. McBride, judge.   Opinion filed February 8, 1902.   Affirmed.

*J. Jay Buck,* and *McDermott & Johnson,* for plaintiffs in error.

*Herrick & Rogers,* and *L. H. Webb,* for defendant in error.


The opinion of the court was delivered by

Johnston, J.:  J. F. McMullen acted as secretary of the Winfield Building and Loan Association from its organization, in January, 1881, until January, 1892, having been elected at the beginning of each year during that period.   On January 13, 1885, he was elected for that year, and gave a bond in the sum of $2000, signed by J. C. McMullen as surety, which

was dated February 2, 1885, and approved four days later. He failed to account for all the moneys received by him, and on February 2, 1892, this action was brought against him and his surety upon the bond mentioned.

In the petition, it was alleged that during the period covered by the bond, J. F. McMullen, as secretary, collected $2190.91 more than he had accounted for or paid over to the treasurer of the association, and that this amount he had fraudulently converted to his own use. There was a further averment that by false entries made in the books of the association, and by false statements and reports, he had concealed his wrong and defaults, and that therefore the association had no knowledge of the same until January, 1892.

A trial was had upon an agreed statement of facts, and among other things it was stipulated that during the year 1885 he collected $10,799.34, and that during the same time he paid to the treasurer only $8763.47, so that from January 1, 1885, until December 31, 1885, his receipts exceeded the amount of his payments to the treasurer $2035.87.

From the facts agreed upon, the court found that J. F. McMullen was indebted to the association on January 1, 1886, in the sum of $2035.87, and that on February 6, 1886, he paid on this indebtedness $197.46, leaving $1838.41 unpaid. For this latter sum, with interest from January 31, 1886, amounting to $3725.84, judgment was given against both the principal and the surety.

It will be observed that the court held the surety liable for all the funds received by the secretary during the year 1885 and for which he had not accounted. It is contended that the bond is prospective only, and that it did not cover any defaults except those occur-

ring after it had been executed and accepted.  As has been seen, the election occurred after the first of the year, the bond was not executed until February 2, and was not accepted until February 6.  A considerable amount of the funds involved here was received by the secretary between January 1 and the execution and acceptance of the bond.  Does the bond cover the defaults of the entire year?  It is true, as plaintiffs in error contend, that sureties are favorites of the law, and that their liability cannot be extended by implication nor enlarged beyond the fair scope of their agreements.  At the same time, their obligation, like other written contracts, must be given a reasonable interpretation, and if the fair scope of its terms covers past derelictions it must be so enforced.  It may be assumed that, in the absence of a provision to the contrary, a bond can only be regarded as prospective and to cover only future transactions, but if the language used is retrospective, and clearly shows an intent to include defaults occurring before the execution of the instrument, the sureties will be held liable.  The condition of the bond is as follows :

"Whereas, said J. F. McMullen has been elected secretary of the Winfield Building and Loan Association, of the city of Winfield, state of Kansas, for the year beginning January 1, 1885, and ending December 31, 1885, and has accepted said office : Now, therefore, if the said J. F. McMullen shall faithfully perform the duties of his office as secretary of said association during said year, then this bond shall be void and of no effect ; but, otherwise, shall remain in full force and effect."

It will be noticed that the bond definitely fixes the period of responsibility.  The surety binds himself for the faithful performance of the duties of the secretary for the year beginning January 1, 1885, and ending

December 31, 1885.  The principal occupied the position of trust during that period, and it was competent for the surety to make himself responsible for the defaults of the entire year.  It appears to have been an annual office, which McMullen held continuously for about eleven years, and he was elected at the first meeting of the association held in January each year.  The fact that the election was after the first of the year and term is not controlling, but the real question is, What time was intended to be covered by the bond? and that must be determined from its terms.  The language is plain, and manifestly the parties contemplated that the bond should be retrospective in its operation, and should indemnify against defaults occurring from the first to the last of the year.  When it appears that a bond is intended to be retrospective as well as prospective, such effect must be given to it. (*Brown v. Wyandotte County*, 58 Kan. 672, 50 Pac. 888; *Myers v. Kiowa County*, 60 id. 189, 56 Pac. 11; *The State, ex rel. Chatham Nat. Bk. v. Finn*, 98 Mo. 532, 11 S. W. 994, 14 Am. St. Rep. 654; *Abrams v. Pomeroy*, 13 Ill. 134.)

The amount collected during the year and not paid over exceeded the amount named in the bond.  There is some contention as to the money on hand at the beginning of 1885, and whether it was misappropriated after the liability of the surety began.  Presumably, money which came into the secretary's hands and should have been there was still in his possession, and the burden is on the surety in cases like this to prove that the funds presumably in the hands of his principal had been embezzled and misappropriated before he became liable on the bond. (*Bernhard v. City of Wyandotte*, 33 Kan. 465, 6 Pac. 617; *Weakley v. Cherry Township*, 62 id. 867  63 Pac. 433; *Bruce*

McMullen v. Loan Association.

*et al. v. The United States*, 17 How. 437, 15 L. Ed.
129.) In like manner, it will be presumed that
moneys collected during the period of liability and
not accounted for were misappropriated during that
period. Where there are successive terms and bonds,
there is considerable difficulty in fixing the time of
misappropriation and the liability of sureties, but
when money is traced to the hands of an officer or
trustee, and is not accounted for, the burden of proof
is upon the principal or surety upon the bond to show
what became of the money. The officer has knowl-
edge of the time of misapplication, and by reason of
the relations existing between principal and surety
the latter is deemed to have knowledge of the fact,
while the information would not be accessible to the
parties indemnified. In *Boyd v. Withers*, 46 S. W.
(Ky.) 13, a case of successive bonds given by a
guardian who had defaulted, and where the ward was
unable to fix the date of the conversion, it was said :

"The liability of a surety on a guardian's bond, so
far as the ward is concerned, is identical with that of
his principal, and after proof of the receipt by the
guardian of the ward's money, and failure to account
for it, the guardian has not faithfully discharged the
duty imposed by his obligation until he has clearly
shown how it has been disposed of. Neither can the
surety in the bond be permitted to say : 'You cannot
prove the date when my principal converted the
money, and therefore you cannot recover on any of the
bonds.' In our opinion, the law requires appellee to
show what became of the money of appellants which
was received by the guardian while he was bound as
surety on his bond ; and, in the absence of proof show-
ing clearly that at the date of the execution of the new
bond the fund was intact in the hands of the guardian,
he should be held liable for the balance shown by the
proof to be due."

See, also, *Wood v. Friendship Lodge*, 50 S. W. (Ky.) 836.

While there is a contention as to the application of payments by the secretary in 1886, and therefore as to whether the amount or misappropriation in 1885 was correctly found by the trial court, we think the facts in the record are sufficient to support the judgment. The agreed facts include voluminous accounts and reports which it is not practical to set out, but an examination of them satisfies us that they made a *prima facie* case for the association.

The judgment rendered is in excess of the penalty of the bond by reason of the allowance of interest. It is contended that the utmost limit of the surety's liability is the penalty named in the bond, and it may be granted that that was the measure of liability when the liability arose. When the secretary converted and wrongfully withheld the moneys of the association the condition of the bond was broken, and a liability arose against both principal and surety. Interest is recoverable against both of them from the time of the default, not as a part of the penalty, but for the detention of the money after the same became due. During the continuance of the default, interest was due from the secretary, just the same as in cases where money is not paid when the creditor becomes entitled to it, and the surety who bound himself against the defaults of the secretary and became liable for them when they occurred can claim no exemption from the rule. So, while it is true, as the plaintiffs in error contend, that the penalty of the bond is the limit of liability of the surety, the liability arose at the time of the default, and the failure to discharge that liability when it matured warranted an allowance of interest beyond the penalty. (*Burchfield v.*

*Haffey*, 34 Kan. 42, 7 Pac. 548 ; 1 Sedg. Dam. § 303 ; 4 A. & E. Encycl. of L. [2d ed.] 701.)

It is next contended that the action was barred by the statute of limitations. A default may be said to have occurred in the beginning of 1886, and the action was not brought until February, 1892—more than six years after the default. It was based on the written bond, and therefore falls within the five-year limitation. The question then arises, Was the action brought within five years after the cause of action accrued? It was alleged that the secretary artfully and fraudulently concealed his misappropriations by making false entries in the books and by failing to make entries in the books of moneys received by him, as well as by making false entries and statements in his written reports of the transactions of his office, and that the association had no knowledge of his wrongful and fraudulent acts until some time in January, 1892. Among the agreed facts, it is stated that the secretary's reputation for honesty and integrity during all the time that he was in charge of his office was good, and that the officers and members of the association had perfect confidence in his honesty and integrity. They believed that his statements and reports as to the money collected and paid out were true, and they had no knowledge that he had collected more than was reported until about the 1st day of January, 1892. Did this fraudulent concealment interfere with the operation of the statute of limitations? Did the cause of action accrue when the fraud was committed, or not until the fraudulent conduct and defaults were discovered? Courts of equity have been holding that, independent of a statutory provision, the defendant's fraud and concealment of a cause of action will postpone the running of the statute of limitations until

20—64 KAN.

such time as the plaintiff discovers the fraud; and this upon the theory that the defendant, having by his own wrong and fraud prevented the plaintiff from bringing his action, cannot take advantage of his own wrong by setting up the statute as a defense. Some authorities confine this rule to proceedings in courts of equity, but hold that at law neither fraud, concealment nor other circumstance will affect the operation of the statute, unless it is expressly provided for by statute. The weight of authority in this country and in England applies the rule to actions at law as well as to suits in equity. In *Bailey v. Glover*, 21 Wall. 342, 22 L. Ed. 636, Mr. Justice Miller, in holding that concealed fraud was an implied exception to the statute of limitations, equally applicable to suits at law as well as in equity, said:

"Statutes of limitations are intended to prevent frauds, to prevent parties from asserting rights after a lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

See, also, *Munson v. Hallowell*, 26 Tex. 475, 84 Am. Dec. 582; *Rosenthall v. Walker*, 111 U. S. 185, 4 Sup. Ct. 382; *Traer v. Clews*, 115 U. S. 528, 6 Sup. Ct. 155, 29 L. Ed. 467; *Lieberman v. Bank*, 40 Atl. (Del. Ch.) 382; *Lieberman v. First Nat. Bk.*, 2 Pennewell (Del.) 416, 45 Atl. 901, 48 L. R. A. 514; *Sparks v. Farmers' Bank*, 3 Del. Ch. 274; *Moore v. Waco Build. Ass'n*, 19 Tex. Civ. App. 68, 45 S. W. 974; 19 A. & E. Encycl. of L. (2d ed.) 245.

McMullen, by reason of his position and duties, occupied a trust relation, and was in fact an agent of the association.  His misconduct and default was a breach of the relation of trust and confidence, and the general rule is that the statute of limitations does not begin to run until the breach of trust or default in the performance of duties occurs and is brought to the knowledge of the principal.  (*Perry v. Smith*, 31 Kan. 423, 2 Pac. 784.; *Moore v. Waco Build. Ass'n,* supra.) In *Lieberman v. First Nat. Bank,* supra, which was a case brought upon the bond of a defaulting bank clerk, it was contended that while the rule as to concealed fraud was enforceable against the one who committed the fraud, it did not apply to innocent sureties, who had no knowledge of and did not participate in the fraud.  The court, after reviewing many authorities holding that sureties stand in no better position than their principal, said :

"It therefore seems to be established that, in cases on official bonds, concealed fraud on the part of the principal will deprive both principal and surety of the benefit of the statute of limitations ; that the statute does not begin to run until the fraud is discovered. The reason seems to be that in such bonds the sureties guarantee the good conduct and faithfulness of the principal in the discharge of the duties of his office, and that in equity and good conscience they should not be exempt from liability for his misconduct and peculations when by fraudulent concealment he has prevented discovery until the time limited by the statute to bring action has expired.  Any other construction would make the very frauds against which the sureties covenanted the means for relief from liability.  The bond in such case, instead of securing the faithfulness of the officer, would tend to promote on his part skilfully and fraudulently concealed peculations, and would be an inducement to fraud.  If concealed fraud, which the principal undertakes not to

perpetrate, deprives such principal of the protection of the statute, is it not equally reasonable that the undertaking of the surety that such fraud should not be perpetrated should exclude the surety also? The principal undertakes not to commit fraud. The surety guarantees that he shall not commit fraud. There would seem to be no substantial reason why their respective liabilities for such fraud should be different.''

So, here, the surety guaranteed the honesty and faithfulness of McMullen, and promised to make good his defaults, and there is no good reason why the surety should be relieved of liability for the dishonesty of the secretary when by reason of the same dishonesty the liability was covered up. We think the liability of the surety depends upon the liability of the principal. There is no distinction between their liabilities in cases of concealed fraud, and the statute does not begin to run in favor of either until the fraud is discovered.

On the part of the surety, there is a contention that the books of the association were open to the inspection of its officers and members; that they should have detected the fraud; and that if due diligence had been exercised the dishonesty would have been detected and the defalcation prevented or reduced. While negligence frequently is a bar to relief, on the principle that one ought not to recover from a surety damages caused by himself, the fact is that the surety made an unconditional promise to make good the defaults of his principal. No positive duty to the surety was imposed upon the officers and members to keep so close a watch over the conduct of the secretary that no fraud could be committed nor defalcation occur. Of course, they could not act in bad faith toward the surety and, relying upon his liability, omit any effort to protect the funds of the association, after receiving

Telegraph Co. v. Simpson.

notice of the dishonesty and unfaithfulness of the secretary. He was a trusted officer, charged with the management of their business, and as he bore a good reputation for honesty during most of his incumbency they had a right to assume that he would faithfully perform his duties until they received notice to the contrary. They had no knowledge or notice of unfaithfulness until 1892, and the mere fact that they did not detect crookedness in his books and reports before that time is not an indication of bad faith toward the surety, and does not exonerate him. (*Lieberman v. Bank*, supra; *Lieberman v. First Nat. Bank*, supra; *Moore v. Waco Build. Ass'n*, supra; *Graves, etc., v. The Lebanon National Bank*, 10 Bush, 28, 19 Am. Rep. 50; *Wayne v. Commercial National Bank*, 52 Pa. St. 343; *Tapley v. Martin*, 116 Mass. 275; *Amherst Bank v. Root and others*, 2 Metc. 540.

The judgment of the district court will be affirmed.

CUNNINGHAM, GREENE, ELLIS, JJ., concurring.