THE CITY OF DICKINSON, a Municipal Corporation, v. J. S.
WHITE and The Northern Trust Company, a Corporation.

(143 N. W. 754.)

**Action by municipality — treasurer's bond — trial — evidence — findings.**

1. In an action by a municipality upon the official bond of its treasurer
to recover for alleged defalcations, a jury was waived, and the trial court found
that during the treasurer's second term he was short in the sum of $645.11,
and that during his third term the aggregate shortages amounted to more than
the penalty in the bond, and he allowed a recovery for such latter shortages in
the sum of $2,000, the penalty of the bond with interest. Evidence examined and
*held* amply sufficient to sustain such findings.

**Evidence — receipts — county treasurer — report by city treasurer — city
council — competent proof.**

2. Plaintiff, instead of introducing the books of the city in evidence for
the purpose of establishing the shortages alleged, proved the same by intro-
ducing in evidence certain receipts given by its treasurer to the county treasurer
for sums paid by the latter to the former as the proceeds of taxes collected
and belonging to the city, and it followed this proof by official reports made by
its treasurer to the mayor and city council wherein lesser amounts were re-
ported. Sufficient foundation was laid for the introduction of these receipts
and reports. *Held*, that such testimony made a prima facie case for the city
as against both the treasurer and his surety. The prima facie case thus es-
tablished is fully corroborated by the testimony of its extreasurer and other
witnesses. *Held*, that such proof was competent and amply sufficient to estab-
lish the alleged shortages.

**Pleading — sufficiency of complaint — challenged — findings — errors.**

3. The question of the sufficiency of the complaint to state a cause of action
is not challenged by certain assignments of error merely attacking certain
findings as not supported by the evidence.

**Shortage proven — presumption — term of office.**

4. A shortage shown to exist at a certain time will, in the absence of proof
to the contrary, be presumed to have arisen on account of defalcations occur-
ring during that term of office, and not to include shortages occurring in pre-
vious terms.

**County warrant — fraudulent issue by auditor — shortage — liquidation.**

5. The evidence discloses that defendant White, the extreasurer of the
plaintiff and the principal in the bond sued upon, was also county auditor of S.
county, and to cover up an admitted shortage in his account as city treasurer

existing on July 14, 1909, he issued a fraudulent county warrant payable to another, and indorsed the payee's name upon the back, and on such date deposited the same in the First National Bank of Dickinson, such bank giving him credit as city treasurer on its books for said amount. The trial court found, and such finding is supported by ample evidence, that the bank received such warrant merely for collection, and that thereafter, on discovering the fraudulent character of the warrant, they charged such credit off its books by debiting White, as city treasurer, with the amount of such warrant.

*Held,* that the above transaction did not operate to liquidate such shortage so as to exonerate White's surety on his official bond.

**Defalcations — interest on allowed — recovery — penalty of bond.**

6. The trial court allowed plaintiff interest at the rate of 7 per cent per annum on the amount of such shortage shown to exist from the expiration of White's term in which such shortages arose.

*Held,* that such allowances were sufficiently favorable to appellant. The fact that the recovery, including interest, exceeded the penalty of the bond, does not render the allowance of interest unwarranted.

**Rehearing — evidence — remittitur — costs — statute of limitations.**

7. Upon a rehearing and a reconsideration of the evidence relative to the extent of a shortage which occurred in White's account with the City of Dickinson during his last term, *held* that such evidence is insufficient to support a finding that such shortage amounted to $2,150. The fair import of the testimony warrants a finding merely that such sum constitutes the aggregate amount of all shortages occurring in that and the two prior terms. A new trial is accordingly ordered unless plaintiff elects, within thirty days from the date of filing the remittitur, to remit from the judgment the portion in excess of $2,050, with interest and costs, the cause of action to recover for the shortage of $100 shown to have occurred during the first term being barred by the statute of limitations.

**Presumption as to shortage — terms of office — rule not applicable.**

8. The presumption that a shortage shown to exist in a certain term is presumed to have occurred during that term is, for reasons stated, held not applicable.

**Interest on surety bond — breach — notice thereof to sureties — demand.**

9. On such rehearing we recede from the views expressed in our former opinion relative to the time from which interest may be computed, and it is *held,* as against sureties on official bonds, that interest may be reckoned only from the date of notice to the sureties of the breach, or from the date of a demand on them to make good such breach. No notice or demand having been shown, interest is allowed only from the date the action was commenced.

Opinion filed June 13, 1913.   On rehearing October 22, 1913.

Appeal from District Court, Stark County, *Crawford, J.*

From a judgment in plaintiff's favor, defendant, The Northern Trust Company, appeals.

Affirmed, on condition.

*Pierce, Tenneson, & Cupler,* for appellant.

The bank purchased the warrant, placed it on its books as a proper credit, and it could not be charged back. Such transaction was *closed,* and it constituted payment. Bryan v. First Nat. Bank, 205 Pa. 7, 54 Atl. 480.

A sale is shown where a check is accepted as cash, and amount checked out, and pass book afterwards written up without charging back the check. Taft v. Quinsigamond Nat. Bank, 172 Mass. 363, 52 N. E. 387; National Surety Co. v. State Sav. Bank, 14 L.R.A.(N.S.) 155, 84 C. C. A. 187, 156 Fed. 21, 13 Ann. Cas. 421; State ex rel. Livesay v. Harrison, 99 Mo. App. 57, 72 S. W. 469; Friedlander v. Texas & P. R. Co. 130 U. S. 425, 32 L. ed. 994, 9 Sup. Ct. Rep. 570.

The title to the amount of money represented by the warrant became and *was vested in the city.* Custer County v. Walker, 10 S. D. 594, 74 N. W. 1040.

No portion of a trust fund can be devested, to pay the trustee's individual debt to the bank. 5 Cyc. 550, 551, note 57; Central Nat. Bank v. Connecticut Mut. L. Ins. Co. 104 U. S. 54, 26 L. ed. 693.

Where the facts are such that no loss can have been suffered, no interest is allowed. In the absence of notification, interest is only allowable from the issuance of the writ. Trumpler v. Cotton, 109 Cal. 250, 41 Pa. 1033, 1036; 1 Brandt, Suretyship & Guaranty, 3d ed. § 126.

*H. A. Burgeson* and *T. F. Murtha,* for respondent.

The receipts given by White for moneys received were competent evidence. Our statutes make them such. Rev. Codes 1905, §§ 7298, 7299.

It was the duty of the city treasurer to give a receipt. Rev. Codes 1905, § 2711.

The amount of recovery is limited to the principal of the bond, plus interest from the date of the breach. Getchell & M. Lumber & Mfg. Co. v. Peterson, 124 Iowa, 599, 100 N. W. 550; Thomssen v. Hall County, 63 Neb. 777, 57 L.R.A. 303, 89 N. W. 393; Clark v. Wilkinson, 59 Wis. 543, 18 N. W. 481; Whereatt v. Ellis, 103 Wis. 348, 74 Am.

St. Rep. 865, 79 N. W. 416; McMullen v. Winfield Bldg. & L. Asso. 64 Kan. 298, 56 L.R.A. 924, 91 Am. St. Rep. 236, 67 Pac. 892; Griffith v. Rundle, 23 Wash. 453, 55 L.R.A. 381, 63 Pac. 199; Rev. Codes 1905, §§ 2707, 2713.

FISK, J.   The city of Dickinson sues to recover against J. S. White, its ex-city treasurer, and against his surety, the Northern Trust Company, upon certain official bonds given by the said White as such city treasurer, it being plaintiff's contention that the said White defaulted and failed to account for city funds collected and received by him in his said official capacity.

The defendant White was not served with process, and made no appearance in the action, and the Northern Trust Company alone appeals.

A jury was waived and the cause tried to the court, resulting in findings and conclusions favorable to the plaintiff on the second and third causes of action, but holding that the first cause of action was, at the time this action was commenced, barred by the statute of limitations.

The statement of facts in appellant's brief is substantially correct, and we quote from the same as follows:

"The defendant J. S. White was elected treasurer of the city of Dickinson for three successive terms of two years each, commencing in April, 1904, and ending in April, 1910.   He executed his three official bonds, one dated April, 1904, the second dated April, 1906, and the third dated April, 1908, each covering a period of two years from its date, and each for the sum of $2,000.   The defendant, the Northern Trust Company, was surety upon each of these three bonds.   In April, 1911, the city of Dickinson commenced this action upon all three bonds to recover an alleged shortage in the accounts of said White.

"White was also city treasurer from 1900 to April, 1904, but the Northern Trust Company was not surety on his bond during that period.

"The first cause of action is based upon the bond dated April, 1904, to which the Northern Trust Company answered, denying that any shortage existed, and also pleading the statute of limitations.   As the court found that the first cause of action was barred by the statute of limitations, all allegations of the complaint and answer with refer-

ence to the first cause of action, as well as Exhibits 7, 8, 11, and 12, and testimony offered in connection with same, are immaterial.

"The second cause of action is based on the bond executed in April, 1906, which is the same in form as Exhibit A. Paragraph VI. of the second count of the complaint alleges 'that the defendant J. S. White did, during his said term of office and in his capacity as such officer, collect as taxes various sums of money, amounting in the aggregate to the sum of $6,285.11, and that of this said amount the said J. S. White accounted for and paid over to the plaintiff the sum of $5,640,'. making an alleged shortage of $645.11 under the second cause of action. This was denied by the Northern Trust Company.

"The third cause of action is based on the bond executed in April, 1908, which is the same in form as Exhibit A, and paragraph VI. of the third count of the complaint alleges that said White failed to account for the sum of $909.88 for taxes collected, and further alleges 'that the said J. S. White, in his capacity of said officer and under color thereof, did deposit to his credit as city treasurer a number of worthless warrants purporting to have been drawn on Stark county, North Dakota, the said warrants having been repudiated by said Stark county, and the same were returned by banks holding same as deposits to the said defendant, J. S. White, as city treasurer, and same were charged to the plaintiff, together with interest thereon amounting to the sum of $6,807.96. A list of said purported warrants is hereto attached and marked Exhibit D and made a part hereof.' Exhibit D, so far as material, refers to warrant of Stark county No. 12,627, for $2,150 alleged to have been deposited in the First National Bank of Dickinson on July 14, 1909. The allegations of this paragraph were denied by the answer of the Northern Trust Company.

"To prove the alleged shortage under the second count, plaintiff offered in evidence Exhibit 9, purporting to be a report of J. S. White to the city council for March, 1908, and Exhibit 13 which purports to be a receipt by White to the county treasurer, dated March 31, 1908, for taxes.

"To prove the alleged shortage under the third count, plaintiff offered in evidence Exhibit 10, purporting to be a report by White to the city council for February, 1909, and Exhibit 14, which purports to be a receipt by White to the county treasurer dated February 23,

1909. Also under the third count, plaintiff offered in evidence Exhibit 15, purporting to be a warrant for $2,150, the slip showing its deposit to the credit of J. S. White, city treasurer, marked 19, the debit slip of the bank marked Exhibit 20, and the page of the cash book of the city marked Exhibit 21, all of which were objected to. Exhibits 20 and 21 were made February 10, 1910. White ceased to act as city treasurer December 16, 1909.

"The purported reports of White to the city council, Exhibits 9 and 10, were received in evidence over objection that they were incompetent, not the best evidence, and shown to be mere copies. The books of the city or of White were not produced in court nor offered in evidence. The purported receipts to the county treasurer, Exhibits 13 and 14, were received in evidence over objection that they were incompetent, and no proper foundation laid.

"There was no further evidence of shortages than that alleged to have been caused by these Exhibits 9, 10, 13, and 14, and the court found that under the second cause of action a shortage of $645.11 had been proved to exist in March, 1908, and that a shortage of $841.68 had been proved to exist under the third cause of action in February, 1909.

"The court further found with reference to the third cause of action that on July 14, 1909, the date the warrant was deposited and credited by the bank to White's account, he was short in his accounts in excess of the sum of $2,150. The court does not find how or when such shortage was caused, nor its amount; and it must have included the amounts stated above, as the court found that they existed prior to July 14, 1909.

"The only testimony in any way supporting such finding was that of J. S. White, which was objected to by us, and is indefinite and uncertain.

"Exhibit 15 was received in evidence over objection that it was incompetent, irrelevant, and immaterial, not proved to be a forgery, and on the further ground that it had been purchased by the First National Bank of Dickinson from White, and was the property of said bank, and that the bank had no right or authority to charge it back to the city.

"J. S. White kept an account at the First National Bank of Dickin-

son in the name of 'J. S. White, City Trs.,' and the warrant Exhibit 15 was received from White by Alphonzo Hilliard, the president, on July 14, 1909. The deposit slip, Exhibit 19, was made out and the amount of the deposit, including Exhibit 15, was credited to White's account, as city treasurer.

"T. Arthur Tollefson, who testified for plaintiff, has been assistant cashier of the First National Bank of Dickinson since November, 1908, and succeeded White as city treasurer. . He testified that it was the custom of the bank to carry, as cash items, warrants taken by the bank under the same circumstances as Exhibit 15, and then take the lot of warrants after they are registered by the county treasurer, and put them into 'loans and discounts;' that this was done with Exhibit 15, and that such warrants, even while carried as cash items and before they were placed in the loans and discount ledger, belonged to the bank. Exhibit 15 was deposited July 14, 1909, and was presented by the bank to the county treasurer on the same day and registered by him for payment. It was not 'charged back' by the bank until February 10, 1910, and then the account of 'J. S. White, city trs.,' was debited with the amount shown by Exhibit 20. On that date, and after the amount of the slip Exhibit 20 was charged against the account, the city still had a balance there, and it is shown by White's bank book, Exhibit A1, that he had $10,396.90 in that account on September 1, 1909, which was subsequent to the date the court found all of the alleged shortages to have occurred.

"The court found that plaintiff was entitled to recover $645.11 and interest from May 1, 1908, upon the second count and bond, and $2,000 and interest from May 1, 1910, on the third count and bond, or a total of $3,018.30 on the two bonds. Judgment was entered against the Northern Trust Company accordingly on November 30, 1911. A statement of the case was duly settled by the Northern Trust Company and this appeal taken from the judgment. The errors assigned for reversal are insufficiency of the evidence and errors of law in the admission and exclusion of evidence."

The assignments of error relied on by appellant will be considered in the order in which they are presented in the printed brief.

Assignments numbered 1, 2, and 12 relate to certain rulings of the trial court admitting in evidence Exhibits 9, 10, 13, and 14. This

25 N. D.—34.

proof was offered for the purpose of proving the default of $645.11 alleged in the second cause of action, and the default of $909.88 alleged in the third cause of action. Exhibits 13 and 14 are receipts given by White as city treasurer to the county treasurer for moneys received by the former from the latter. White signed such receipts, and they were shown to be records in the office of the county treasurer. Such Exhibits are as follows:

Exhibit 13

No. 1134                City Treasurer's Office              $6,285.11
                        City of Dickinson, N. D., March 31, 1908.
Received of John Riessbeck, Co. Treasurer,
Sixty-two Hundred Eighty-five and 11-100 ............ Dollars
Taxes

J. S. White,<br>City Treasurer.

Exhibit 14

No. 1203                City Treasurer's Office               $909.88
                        City of Dickinson, N. D., Feb. 23, 1909.
Received of John Riessbeck, Co. Treasurer,
Nine Hundred and Nine and 88-100 ................... Dollars
Taxes

J. S. White,<br>City Treasurer.

These receipts furnish prima facie evidence of the fact that White, as city treasurer, received from the county treasurer the amounts therein mentioned. Rev. Codes 1905, §§ 7298 and 7299. It was White's duty to give receipts for moneys thus received. Section 2711, Rev. Codes 1905. Appellant's counsel does not controvert the correctness of the above proposition; but they contend that this was not the proper method of proving the alleged shortages. Plaintiff, after introducing the above receipts, offered in evidence Exhibits 9 and 10, which consist of reports made by White, as city treasurer, to the mayor and city council of Dickinson on March 31, 1908, and on February 27, 1909, purporting to show the receipts and disbursements made by him as such city treasur-

er for the months of March, 1908, and February, 1909, respectively, and in which reports White accounts and reports for the sum of only $5,640 for moneys received from the county treasurer for taxes in March, 1908, whereas Exhibit 13 shows that he received $6,285.11, making a difference of $645.11 as found by the trial court in its fifth finding of fact; and, by Exhibit 10 he accounts for and reports as having received from the county treasurer the sum of only $67.20, whereas by the receipt Exhibit 14 he admits that he received $909.88, making a difference of $842.68. Counsel for appellant urge that this method of proving shortages is improper, and that plaintiff should have shown the total amount of money received and expended by White during the terms of the bonds, or either of them, and they emphasize the fact that there was no proof offered as to what amount White had paid over and accounted for to his successor in office, nor of the amount for which he thus should have paid out and accounted for, and that the books of the city were not offered in evidence or produced in court for the purpose of showing these facts. They also contend that Exhibits 9 and 10 were improperly received in evidence, as they were not the original records, and were incompetent, and not the best evidence, and no foundation had been laid for their introduction. We think appellant's contentions are untenable. The proof offered by the plaintiff, in the absence of any showing to the contrary, constituted prima facie evidence that White had not accounted for the moneys thus received by him as shown by said Exhibits 13 and 14, and that there were, therefore, shortages in the sums above mentioned. While the method of proof suggested by appellant's counsel of establishing such alleged shortages would be proper and perhaps preferable, such method is not the sole and only method of proving such facts, and it was perfectly proper for plaintiff to show that White had receipted for specific moneys belonging to the city, and had reported to the mayor and city council lesser amounts than those for which he had thus receipted. As before stated, in the absence of proof to the contrary, this constituted prima facie evidence of the existence of shortages and the amount thereof; and if such shortages had been subsequently made up or adjusted, such fact could have been shown by the defendant.

Sufficient foundation for the introduction of all of the Exhibits aforesaid was laid by the testimony of White, who identified all of

such Exhibits as the receipts and reports made and signed by him, and that the difference in the amounts received, and reported as having been received, has never been made up. Exhibits 9 and 10 are the original reports made by White, as city treasurer, and the objections to their introduction in evidence were clearly untenable. The fact that in making such reports the *data* therefor were taken or copied from the books kept by him as city treasurer does not render them inadmissible as secondary evidence. They were made pursuant to official duty, and were originals, and not mere copies.

White distinctly testified that the difference in the receipts as shown by Exhibits 13 and 14 and by these reports, Exhibits 9 and 10, was never made up by him, and he is corroborated in this by the testimony of R. C. Hill, the city auditor, and by T. Arthur Tollefson, the city treasurer. We conclude that the findings of fact numbered 5 and 8, the correctness of which are challenged by the above assignments, are amply supported by the evidence.

By finding 8 the trial court also found that on July 14, 1909, a shortage existed in White's account of a sum in excess of $2,150, and such finding is the basis for assignments of error 8, 9, and 12.

In support of these assignments, counsel for appellant contend that the complaint fails to state a cause of action in so far as the item of $2,150 is concerned. We quote from their brief: "It alleges that the warrant was deposited by White to his credit as city treasurer, and that afterwards it was repudiated by Stark county and charged back against the account by the bank. The city could suffer no damage by this transaction, for it received credit for the amount of the warrant when it was deposited, and the credit was only balanced by the debit when the warrant was charged back. If the defendant is liable to plaintiff, it must be by reason of a shortage in White's accounts. The deposit and charging back of the warrant was immaterial without an allegation that there was then a shortage in White's accounts. The complaint therefore fails to state a cause of action, and does not support finding 7 and for this reason the judgment must in any event be modified."

What we deem to be a conclusive answer to such contention is the fact that such assignments do not challenge the sufficiency of the complaint at all, but they merely challenge the sufficiency of the evidence to sustain the said 8th finding, and the correctness of the trial court's

rulings on certain objections interposed by defendant to certain questions asked the witness White, and in receiving his answers thereto, by which testimony White admitted that he had used the city's money to an amount in excess of $2,150, and that the void county warrant, Exhibit 15, was deposited to cover the shortage thereby occasioned.

We think White's testimony was clearly competent, and is amply sufficient to justify the court's finding, number 8, to the effect that there existed a shortage in White's account with the city on July 14, 1909, of over $2,150, and that such shortage does not include the amount alleged and found to have been embezzled from the city by such witness during his previous terms.

It will be presumed, in the absence of proof to the contrary, and none is disclosed in this record, that the shortage thus shown to exist in July, 1909, was created during that term, and the burden was on defendant of showing that it was created during a prior term. Pine County v. Willard, 39 Minn. 125, 1 L.R.A. 118, 12 Am. St. Rep. 622, 39 N. W. 71; McMullen v. Winfield Bldg. & L. Asso. 64 Kan. 298, 56 L.R.A. 924, 91 Am. St. Rep. 236, 67 Pac. 892; Kelly v. State, 25 Ohio St. 567; Hetten v. Lane, 43 Tex. 279; Board of Education v. Robinson, 81 Minn. 305, 83 Am. St. Rep. 374, 84 N. W. 105.

Assignment numbered 13 is closely related to the subject-matter covered in the last assignments of error, and may properly be here considered. It is contended under this assignment that the amount of the alleged shortage on July 14, 1909, was not shown, nor was it shown how or when it was caused, and that consequently such shortage must be deemed to have included therein all prior shortages. While it is true, the testimony does not disclose the exact amount of such shortage, it does disclose that it was in excess of $2,150.

As we have above decided, such shortage will be presumed to have arisen during the current official term in which it was discovered; and this precludes us from holding that such shortage embraces the items shown to have been converted or embezzled during White's prior terms of office. But as to the item of $841.68, which shortage took place in February, 1909, it may have been included in the larger amount shown to have existed in the following July. However, such fact may be conceded, and still the finding of fact, number 8, must remain undisturbed, as it in no manner tends to prejudice this appellant, for the

reason that the total recovery allowed under the third cause of action was $2,000, the amount of the bond, with interest.

Assignments 3 to 7 inclusive relate to the transaction between White and the bank, whereby the former, as city treasurer, deposited in the latter on July 14, 1909, Exhibit 15, being the fraudulent county warrant for $2,150, which was credited to White's account and subsequently charged off by the bank. Appellant's contention as to the legal effect of such transaction is stated in its brief as follows:

"It is our contention: (1st) That the bank purchased the warrant, and, having acquired title to it, could not legally charge it back; (2d) that whether the warrant was purchased or merely taken for collection, the bank dealt with White as an individual in receiving it from him, and the credit to the city's account was a distinct and voluntary act on the part of the bank, done for White's accommodation; and (3d) that if the warrant was repudiated by Stark county, the bank might recover the amount from White, but could not legally recover it from the city or charge it against the account of the city and render the Northern Trust Company liable."

Appellant's counsel rely chiefly upon the case of National Surety Co. v. State Sav. Bank, 14 L.R.A.(N.S.) 155, 84 C. C. A. 187, 156 Fed. 21, 13 Ann. Cas. 421. We shall not take the time to analyze the holding in this case, for, conceding that it supports appellant's contention, it apparently stands alone as an authority. There is a strong dissenting opinion by Judge Hook; and, moreover, this case was later before the circuit court of appeals and an opposite conclusion reached. See National Surety Co. v. Arosin, 117 C. C. A. page 313, 198 Fed. 605. It is true, the former opinion was not expressly reversed, and the later decision seems to be placed upon a somewhat different state of facts from those disclosed on the former appeal. In fact, the first decision reversed the lower court in sustaining a demurrer to the bill of complaint, and the second affirms the lower court's decision after trial upon the merits based upon admissions in the pleadings and upon an agreed statement of facts, the court holding that no recovery could be had by the surety company. We think the second decision clearly sound, and it supports respondent's contention in the case at bar. We feel constrained to differ from appellant's counsel on each of their contentions under these assignments. We are unable to reach the conclusion that by

such transaction the shortage of $2,150, which existed on July 14, 1909, was liquidated so as to exonerate the surety company from liability to the city. We must uphold the trial court's finding to the effect that the bank received this county warrant from White merely for collection, as such finding has ample support in the testimony. That the president of such bank acted in such transaction in unquestionable good faith and without any knowledge of the fraudulent character of said warrant is not questioned by appellant, and must, from the record, be accepted as an established fact in the case. There is nothing in the evidence to support counsels' contention in effect that the president of such bank was negligent in not discovering the character of such warrant, and therefore should be held to have voluntarily come to White's rescue by aiding him to liquidate the same to the city, and herein lies the distinction between the case at bar and some of the authorities cited in appellant's brief. Under the circumstances we think the bank had a legal right, both as against the city and the surety company upon discovering the fraudulent character of such warrant, to charge off the tentative or conditional credit which it had given White's account on its books at the time of receiving such warrant for collection. Especially ought this to be true as against White and his surety, this appellant.

Appellant's last assignment challenges the ruling of the trial court in allowing interest at the rate of 7 per cent per annum on the shortages found to exist as alleged in the second and third causes of action. It is asserted that no demand was made on this appellant for the payment of the shortages, except such demand as the bringing of this action constituted, and that interest cannot be allowed except from the date of a demand. It is also contended by appellant that the interest and principal together should not exceed the penalty of the bond, and, lastly, that the rate of interest allowed should not exceed 3 per cent per annum, as the evidence shows that this was the amount received by the city on deposits of its funds, and is the highest rate provided by law for deposits by cities. We do not think there is any merit in these contentions. Under the weight of authority interest is allowable from the date of the default, but in the case at bar interest was allowed only from the date of the expiration of White's term of office, at which date it was his duty to account for and pay over to his successor all funds then chargeable to him. In view of the trial court's decision, allow-

ing interest merely from the date of the expiration of White's respective terms of office, it is unnecessary for us to determine whether interest should have been computed from an earlier date. The following authorities clearly sustain the allowance of interest in this case: Getchell & M. Lumber & Mfg. Co. v. Peterson, 124 Iowa, 599, 100 N. W. 550; Thomssen v. Hall County, 63 Neb. 777, 57 L.R.A. 303, 89 N. W. 393; Clark v. Wilkinson, 59 Wis. 543, 18 N. W. 481; Whereatt v. Ellis, 103 Wis. 348, 74 Am. St. Rep. 865, 79 N. W. 416; McMullen v. Winfield Bldg. & L. Asso. 64 Kan. 298, 56 L.R.A. 924, 91 Am. St. Rep. 236, 67 Pac. 892; see also note to Griffith v. Rundle, 56 L.R.A. 381.

But appellant's counsel insist that the allowance of principal and interest, as against the appellant, cannot exceed the penalty of the bond, which is $2,000; and they cite § 6101, Rev. Codes, 1905, which provides: "A surety cannot be held beyond the express terms of his contract, and if such contract prescribes a penalty for its breach, he cannot in any case be liable for more than the penalty."

We do not think that it was intended by such statute to change the general rule that interest is recoverable on the full penalty of the bond from the date the liability accrues, where, as in this case, such liability amounts to the penalty named. In other words, the surety is liable for interest on the principal sum, for which it is responsible from the date the same is due and payable, even though the principal and interest exceed the penalty. We think the authorities cited above fully sustain us on this proposition.

We do not think there is any merit whatever in appellant's last contention, that the rate of interest allowed should not exceed 3 per cent per annum.

Finding no error in the record, the judgment is affirmed.


On Rehearing.


FISK, J. A rehearing having been granted herein, a reargument upon certain points has been had, and at this time we will briefly consider such points.

Upon the question as to the legal effect of the transaction between White and the bank relative to the deposit of the fraudulent county

warrant for $2,150, and the credit of such sum to White's account as city treasurer on the books of the bank, we are constrained to adhere to the views formerly expressed. The trial court found that such warrant was taken by the bank merely for collection, and such finding is, on this appeal, entitled to the same weight as the verdict of a jury, it having substantial support in the evidence.

Upon the question of the amount which plaintiff is entitled to recover, we have, upon further consideration, reached the conclusion that we committed error in our former opinion in holding that the evidence warrants a finding that a shortage arose during White's last term in the sum of $2,150. Such finding rests solely upon White's admission that on July 14, 1909, the date of the deposit of the fraudulent county warrant as aforesaid, he had used the city's money to the amount of $2,150 or more. We formerly construed such admission as sufficient to warrant the trial court's third conclusion, to the effect that White had embezzled during his third term a sum in excess of the penalty of the bond, and consequently that defendant is liable on the third cause of action in the full penalty of its bond, $2,000, with interest. We feel constrained to modify the foregoing opinion in this respect, and to hold that the third conclusion of the trial court has support neither in the findings of fact nor in the evidence. The finding number 8 is substantially in accord with White's testimony to the effect that on July 14, 1909, he was short in his account with the city, and had appropriated to his own use moneys of such city in excess of the sum of $2,150. In the light of the testimony as to the three specific defalcations which the testimony shows occurred prior to July 14th, one of which took place during such third term, and none of which had ever been accounted for, we are unable to construe White's testimony as an admission that the item of $2,150 was exclusive of these prior defalcations. It can, we think, just as reasonably be construed as including, or intending to include, all such prior shortages in making up the sum total of $2,150. We are not warranted in interpreting as *exclusive,* rather than *inclusive,* of such prior defalcations. Plaintiff had the burden of establishing the extent of such defalcations, and it failed to sustain such burden as to any defalcations in excess of those aggregating the sum of $2,150. We do not think the presumption that a shortage shown to exist in a certain term is presumed to have oc-

curred during that term obtains where, as in this case, the contrary is equally as probable. In other words, there is no room for such presumption where it appears, or is probable as in this case, that prior shortages shown to have arisen *during* other terms may have been included in making up a shortage shown to have existed during a subsequent term. The fair import of the testimony therefore does not, in our judgment, warrant us in sustaining a recovery in excess of $2,050 and interest, this being the aggregate of all the shortages proved, less the shortage which arose during the first term, a recovery for which was denied by the trial court for the reason that the cause of action was barred by the statute of limitations.

We are also constrained to recede from the views expressed in our former opinion as to the date from which interest may be computed. We think the weight of modern authority, as well as the better reason, allows interest as against sureties on official bonds only from the date of notice to the sureties of the breach, or a demand on them to make good such breach. We find support for this in the following authorities, as well as others not cited:

1 Brandt, Suretyship & Guaranty, 3d ed. 126, and cases cited; Murfree, Official Bonds, § 689; 16 Am. & Eng. Enc. Laws, 1043 and cases cited; 22 Cyc. 1543, and cases cited; Frink v. Southern Exp. Co. 82 Ga. 33, 3 L.R.A. 482, 8 S. E. 862; Curtis v. United States, 100 U. S. 119, 25 L. ed. 571. See also valuable note to Griffith v. Rundle, 55 L.R.A. 381, where the modern rule is stated and the authorities collated. See Folz v. Tradesman's Trust & Sav. Fund Co. 201 Pa. 583, 51 Atl. 379; Trumpler v. Cotton, 109 Cal. 250, 41 Pac. 1033, 1036; Pennsylvania Co. v. Swain, 189 Pa. 626, 42 Atl. 297; Thomas Laughlin Co. v. American Surety Co. 51 C. C. A. 247, 114 Fed. 627; American Surety Co. v. Lawrenceville Cement Co. 110 Fed. 717.

The evidence fails to disclose any notice to appellant of such breach or any demand upon it to respond prior to the commencement of this action. Interest should therefore be computed only from the date the action was commenced.

The foregoing conclusions necessitate a reversal of the judgment and a new trial, unless respondent elects to remit therefrom all sums in excess of $2,050, and interest as aforesaid, and the costs and dis-

bursements as taxed. Such election may be exercised within thirty days from the date of the filing of the remittitur in the court below.

The cause is remanded for further proceedings in accordance with the views herein expressed.