CLARK COUNTY, Respondent, v. HOWARD, et al, Appellants.

(237 N. W. 561.)

(File No. 7028.   Opinion filed June 26, 1931.)

*Sterling, Clark & Grigsby,* of Redfield, and *George F. Sherwood,* of Clark, for Appellants.

*Hans Hanson,* of Vienna, and *W. C. Brower,* State's Attorney, of Clark, for Respondent.

MISER, C. Frank J. Howard was the treasurer of Clark county, S. D., for two terms; the first term beginning January 1, 1923; the second term ending December 31, 1926. The Federal Surety Company, appellant herein, was surety on his official bond in each term in the penal sum of $75,000. Howard embezzled on various dates in his first term sums amounting to $393.65 and on various dates in his second term sums amounting to $16,780.13. Neither Clark county, respondent herein, nor Federal Surety Company, appellant herein, knew of Howard's defalcations until shortly prior to August 2, 1928, at which time Clark county made formal demand on the surety company for payment, claiming, however, that the amount of the defalcations was $19,099.57. After a trial, in which the total amount of the defalcations was found to be $17,173.78, the court concluded that Clark county was entitled to judgment against Howard and the surety company for that sum, but reserved decision as to the date or dates from which interest should be computed until after argument of counsel. Thereafter in a supplemental judgment it was adjudged that Clark county should recover from the principal and surety the sum of $3,445 as interest on the sums embezzled, the interest being computed at the rate of 7 per cent per annum from the date of each act of embezzlement. The surety company promptly paid the total of the sums found to be embezzled and appealed from the supplemental judgment for interest. It claims that it is liable for interest, not from the several dates of each act of embezzlement, but from the date when it was first advised by Clark county of those embezzlements, namely, August 2, 1928.

The bond sued upon, omitting portions thereof, is as follows:

"Know all men by these presents: That we, Frank J. Howard * * * as Principal, and the Federal Surety Company * * * as Surety, are held and firmly bound unto Clark County, South Dakota, in penal sum of Seventy-five Thousand (75,000) Dollars * * * to be paid to the said Clark County * * * for which payment well and truly to be made, we bind ourselves * * * jointly and severally, firmly by these presents. * * *

"The condition of the above obligation is such That whereas, the said Frank J. Howard has been elected to the office of County Treasurer. * * *

"Now, therefore, if the said Frank J. Howard shall well, truly and faithfully perform all official duties * * * and if he shall account for and pay over * * * all moneys or other property that may come into his hands as such county treasurer * * * then this obligation would be null and void; otherwise to remain in full force and effect."

The sole question raised by this appeal is the date from which interest should be computed as against the surety on the foregoing bond. A casual reading of sections 1474 and 1485, R. C. 1919, would seem to answer this question. These sections are as follows:

"§ 1474. A guaranty is a promise to answer for the debt, default or miscarriage of another person."

"§ 1485. A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal and without demand or notice."

The definition of "guaranty" given by section 1474 is almost identical with the definition of the "contract of suretyship" as given by many courts and certain text writers. See 50 C. J. 12, 13. But in our Code while sections 1474 to 1479, inclusive, deal with the law of guaranty, sections 1498 to 1512, inclusive, deal with the law of suretyship. A "surety" is defined by section 1498 as one "who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some acts in favor of a third person, or hypothecates property as security therefor." It is unnecessary to state herein the exact distinction between a guarantor and a surety under our law. However, they are defined, not by the two sections 1474 and 1498 alone, but by the entire chapters of which these sections are parts and by the decisions of this and other courts. It is enough, for the purpose of this opinion, to state that there is a difference, under our Code, between the liabilities of guarantors and sureties, and that section 1485 in the chapter on guaranty applies to guarantors and not to sureties. Appellant herein contracted as a surety.

Considering the many instances in which surety companies have settled with obligees in official bonds, it is strange that there is so little positive law as to when interest should commence to

run against the surety on such a bond. The explanation may be found in the observation of Dodge, J., in Laycock v. Parker, 103 Wis. 161, 79 N. W. 327, 332, as follows: "The question of interest * * * is usually presented only incidentally to much more important issues, and often decided one way or the other at the close of exhaustive investigation of the other questions." Whatever the reason may be, there is no doubt, after an extended search of decided cases and text-books, that, however well settled this question may be in suretyship practice, it is not well settled by those authorities to whom courts look for aid in the proper decision of legal questions.

Were we willing to accept the positive statement of courts and text-writers without investigation of the authorities on which the positive statements are made, the question might be less difficult. Thus in Dickinson v. White et al, 25 N. D. 523, 143 N. W. 754, 760, 49 L. R. A. (N. S.) 362, the Supreme Court of our sister state says: "We think the weight of modern authority, as well as the better reason, allows interest as against sureties on official bonds only from the date of notice to the sureties or the breach or a demand on them to make good on such breach." So also Stearns on Suretyship (3d Ed.) § 137, page 222, contains the following: "A surety upon a bond is liable for interest upon the damages ascertained from the date of the demand." Also in 16 Am. and Eng. Encyc. of Law (2d Ed.) p. 1043, it is said: "Interest on the penalty of a bond is to be computed, according to some cases, from the time of the breach of the condition; but the weight of authority seems to be that interest in such cases, especially as against sureties, should be computed only from the time of a demand or the institution of suit." Other text-writers and courts are less positive. Thus Brandt, Suretyship and Guaranty (3d Ed.) § 126, contains the following: "The surety's liability for interest accrues either after proper demand on the principal and his refusal to pay, or from the commencement of the suit, in which latter case interest accrues from the day of service. (Citing cases.) There are cases holding that interest runs from the date of the breach. (Citing cases.) Others from the date of demand. (Citing cases.)" In 21 R. C. L. 1087, § 128, Principal and Surety, it is said: "But it seems that interest * * * may be computed only from the time of the demand in case demand may be necessary,

and not from the time of the default. * * * Many authorities, however, permit the computation of interest from the time of the breach of the condition of the bond, irrespective of any demand made." To somewhat like effect, see 50 C. J. 91, § 147, Principal and Surety.

But an examination of the authorities cited by the court and in the texts discloses that in many of them the main question therein discussed is whether the surety should pay interest *when the effect thereof is to exceed the penalty of the bond.* Thus the opinion in Dickinson v. White, supra, seemingly so decisive of the question at bar, cited twelve decisions or texts. The great majority of them deal with the question of whether the surety is liable for interest on the penalty where the damages exceed the penalty of the bond, in point in the North Dakota case. The same is true of the authorities cited in support of the above-quoted statement from 16 Am. and Eng. Encyc. of Law (2d Ed.) p. 1043, apparently so decisive of the question.

But if the authorities cited to support the contention that the surety is liable for interest only from the date of demand prove not entirely satisfactory on careful examination, the same may also be said of the authorities supporting the view that the surety is liable for interest from the time of the defalcation of his principal. See 23 Calif. Juris. 1069, § 55, Suretyship; Montpelier v. National Surety Co., 97 Vt. 111, 122 A. 484, 33 A. L. R. 489. Thus in 21 Calif. Juris. 940, § 118, Public Officers, it is said: "In an action against the sureties on an official bond for a defalcation of the principal, the judgment should first fix the amount of the defalcation and then proceed with a separate judgment against each of the sureties, for the full amount for which each made himself liable, together with costs and interset from the time of defalcation. People v. Breyfogle, 17 Cal. 504." The last of the syllabi of that much-cited Breyfogle Case is as follows: "In suit on the official bond of a County Treasurer for failure to pay over money, legal interest on the amount from the time of defalcation is recoverable." But the frequent citation of People v. Breyfogle on that point seems scarcely justified by the consideration given to the question in the opinion itself. There, without any discussion whatever and without any citation of authority, the court says only: "There was no error in giving interest on the money from the time of the defalcation."

But an examination of scores of cases cited in the discussion of the question whether a surety is liable for interest on the penalty of the bond in the notes in 87 Am. Dec. 753, Ann Cas. 1914C, p. 1194, and 55 L. R. A. 381, and 19 L. R. A. (N. S.) 84, is not without value in revealing the reason for holding that a surety should pay interest in such cases only after demand. This is variously stated as being: "By way of damages for his own default." Bank of Brighton v. Smith, 12 Allen [Mass.] 243, 90 Am. Dec. 144. "For the misconduct of the sureties for the delay in payment." Burchfield v. Haffey, 34 Kan. 42, 7 P. 548. "For their own default in unjustly withholding payment after having been notified of the default of their principal." Frink v. Southern Express Co., 82 Ga. 33, 8 S. E. 862, 3 L. R. A. 482. "If the surety becomes charged, by the default of the principal, for the amount of the penalty, or any portion of it, then it is his duty to pay the same on demand, and if he neglects or refuses, the general principle, as stated, applies and interest is added by way of damages for his own default." U. S. v. Hills, Fed. Cas. No. 15,369, 4 Cliff. 618. "When thereunto requested the surety should see to it that such claims were paid, and that until such request or demand was made, the right to recover interest of the surety did not attach." London & Lancashire Indemnity Co. v. Smoot, 52 App. D. C. 378, 287 F. 952. "But a surety company is chargeable with interest only when it has failed to make good after the defalcation has been called to its attention." In re Perelstine (D. C.) 44 F. (2d) 62, 64. In the very excellent note in 87 Am. Dec. page 745, above referred to, after reviewing a very large number of cases and concluding that the line of authorities, holding that interest should be computed from the time of the breach, rest on the best reason, the writer says, however: "It may be very proper, in some cases, to require demand before interest should begin to run, as where the surety can not otherwise become aware of the breach."

In this case we are not attempting to determine when sureties on all manner of bonds should become liable for interest. We are dealing only with the case of a surety on an official bond where the principal has embezzled money, of which many acts of embezzlement neither the surety nor the obligee were aware until several years thereafter. The surety does not contend that it

should not pay any interest until the court has determined the amount of the principal sum which has been embezzled, as some courts do hold. The surety, appellant herein, contends that it should not pay interest except from the time that it was first advised by a demand by the obligee that its principal had committed the acts of defalcation. We believe that appellant is right in its contention, although an examination of many cases indicates that we might, not without reason, hold that interest should begin to run from the dates of the defalcations.

In Gearhart v. Hyde, 39 S. D. 273, 164 N. W. 58, 59, this court quoted from Laycock v. Parker, 103 Wis. 161, 79 N. W. 327, 335, in part as follows: "The true principle, which is based on the sense of justice in the business community and on our statute, is that he who retains money which he ought to pay to another should be charged interest upon it." Although not quoted by this court, the Wisconsin court also said in that case: "The plaintiff's claims then being such as may draw interest, the next question is, from what date? And about this question some confusion has been thrown by the hasty disposal of interest claims and inconsiderate remarks of courts. The rule of course is that the debtor should pay interest from the time when he ought to have paid the debt."

No one would contend that a bond could not be so drawn as to make the surety liable for interest on the various sums embezzled by its principal from the date of the various acts of embezzlement, nor that the bond sued on herein might not be so construed if the statutes of South Dakota furnished—as they do not—a basis therefor. Section 1962, R. C. 1919, provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt." "Damages," as the term is used in section 1962, is defined in section 1959, R. C. 1919, as follows: "Every person who suffers detriment from the unlawful act of omission of another may recover *from the person in fault* a compensation therefor in money, which is called damages."

It seems particularly inept to say of a surety on an official

bond, who not only does not know of the embezzlement but whose facilities for discovering that an embezzlement has been committed are so inadequate as compared with those of the obligee, that it was at fault in not paying the money from the time of the several acts of embezzlement.

Although the case of Bunkers v. Guernsey, 41 S. D. 381, 170 N. W. 632, 633, differs materially from the case at bar, this court said therein: "From the fact that the money was received by mistake, it necssarily follows that defendant did not know that * * * he had money in his possession that belonged to the plaintiff; and until he was apprised of such fact he owed no duty to plaintiff to return the same. Had he acquired the money wrongfully in the first instance, the case would have been different; then his detention thereof would also have been wrongful, and he would be liable for interest so long as such unlawful detention continued, and this too whether demand were made or not. * * * It may seem like a hardship to plaintiff to be deprived of the use of his money for so long a period of time without compensation therefor, but that the mistake was made in the first instance was as much his fault as the fault of the defendant, and that the mistake was not discovered for so long a time after it was made was wholly the fault of the plaintiff."

While the question of the date from which interest should be computed was not discussed in the opinion by this court in Farmers' Elevator Co. v. Swanson, 33 S. D. 377, 146 N. W. 586, judgment of the trial court was affirmed where the jury had been instructed that interest should commence to run from the date of the demand on the sureties that they make good the losses occasioned by the misappropriation of moneys and grains by the manager of the elecator company. See, also, Pennsylvania Co. v. Swain, 189 Pa. 626, 42 A. 297; Folz v. Tradesmen's Trust & Saving Fund Co., 201 Pa. 583, 51 A. 379.

We therefore conclude that appellant herein is right in its contention that it was liable for interest only from August 2, 1928. We deem it advisable to state, however, that this conclusion is based on the facts of this case and the law as we find it applicable to such facts. We are not attempting in this opinion to determine when interest should begin to run against sureties generally.

The judgment is reversed, and the case is remanded for further proceedings in harmony herewith.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.

MISER, C., sitting in lieu of ROBERTS, J., who deems himself disqualified.