## AMERICAN SURETY CO. OF NEW YORK v. INDEPENDENT SCHOOL DIST. NO. 18 OF LAKE PARK, MINN.

No. 8993.

Circuit Court of Appeals, Eighth Circuit.

Sept. 29, 1931.

BOOTH, Circuit Judge, dissenting.

Charles S. Kidder, of St. Paul, Minn. (Orr, Stark, Kidder & Freeman, of St. Paul, Minn., on the brief), for appellant.

H. N. Jenson, of Detroit Lakes, Minn., for appellee.

Before KENYON and BOOTH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

One William J. Norby was elected treasurer of the Independent School District No. 18 of Lake Park, Minn., appellee herein, for a term of one year from August 1, 1924, and until his successor was duly elected and qualified. He was required to and did give a bond, with the appellant, the American Surety Company, as surety, one of the conditions of which was that he should pay over to the officer entitled thereto all moneys coming into his hands as treasurer. On August 24, 1925, he had on deposit, in his official capacity, in the First National Bank of Lakeview the sum of $15,902.54. On August 24, 1925, that bank was closed and was taken over by the Comptroller of the Currency and was placed in the hands of a receiver. Norby was elected to succeed himself for a term beginning August 1, 1925, but did not qualify until November 12, 1925. His second term expired August 1, 1926. He continued in office, however, until in November, 1926, when he was succeeded by one Hanson. He had given a second bond, with the appellant as surety, when he qualified on November 12, 1925, to succeed himself. Failing, on the succession of Hanson, to turn over to Hanson any funds belonging to the school district, the district brought suit on the second bond and had judgment thereon for the full amount of its penalty. The present suit thereafter was brought on the first bond to recover the amount lost through the failure of the First National Bank, an amount claimed to be, after the deduction of dividends paid by the receiver, $8,746.41. Appellee had judgment in the District Court for that amount.

The questions raised by the appeal include the following: (1) Did the mere failure of the bank on August 24, 1925, involve a breach as of that date of Norby's obligation as protected by the bond? (2) Did Norby breach the obligation protected by the bond when, succeeding himself on November 12, 1925, he failed to turn over to himself a sum equivalent to that which had been lost by the closing of the bank? And (3) was the bond here sued on still in force on November 12, 1925, when Norby qualified to succeed himself as treasurer?

1. It is suggested but not seriously contended by appellee that Norby breached his obligation to the school district at the time and by reason of the mere failure of the bank in which school funds were deposited. We think this an untenable view. No official depository of the district had been designated. It was certainly consistent with Norby's duty to deposit funds in his charge in some reputable bank, although he did not thereby, as is conceded by appellant, relieve himself of responsibility for them. But his duty to faithfully discharge the duties of his office was not violated by the failure of the bank. That failure was the result of none of his acts nor was it in any sense his fault. He breached no duty until and unless, on proper demand of the district, he failed to pay over funds intrusted to him or until and unless, at the expiration of his term, he failed to turn over to his successors such funds. Failure to pay over funds when required made him and his surety liable, and neither could successfully defend on the ground that a bank in which the funds were deposited had failed. The breach of duty, however, was as of the time of the failure to pay over. Northern Pacific R. R. Co. v. Owens, 86 Minn. 188, 90 N. W. 371, 57 L. R. A. 634, 91 Am. St. Rep. 336; Board of Education v. Jewell et al., 44 Minn. 427, 46 N. W. 914, 20 Am. St. Rep. 586. See, also, United States v. Prescott et al., 3 How. (44 U. S.) 578, 588, 11 L. Ed. 734; Gartley et al. v. People, 28 Colo. 227, 64 P. 208; Rose et al. v. Douglass Township, 52 Kan. 451, 34 P. 1046, 39 Am. St. Rep. 354; Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375, 34 L. R. A. 678, 56 Am. St. Rep. 612; Bush et al. v. Johnson County, 48 Neb. 1, 66 N. W. 1023, 32 L. R. A. 223, 58 Am. St. Rep. 673; State ex rel. v. Moore, 74 Mo. 413, 41 Am. Rep. 322.

2. There was then no breach of Norby's obligation as protected by his bond (if the bond was then in force), on August 24, 1925, when the bank was closed. There is nothing in the record to show any unsatisfied demand on him for funds prior to November 12, 1925, when he qualified as his own successor. The fact that he was his own successor did not affect the nature of his duty which was to turn over to his successor the school funds he had received and had not lawfully paid out. The trial court found as a fact that he did not turn over the funds which originally had been deposited by him in the First National Bank. That finding the evidence supports. At the time he succeeded himself he breached the obligation which his bond pro-

tected, if the bond was then in force. Appellee contends it was not then in force on the theory it had expired before November 12, 1925.

■■■ 3. The bond was executed November 3, 1924. It contained this language:

"The condition of the above Obligation is such, That whereas the above bounden William J. Norby was heretofore duly elected to the office of Treasurer for the Independent School District #18, Minn. for the term of one year from and after the 1st day of August, 1924, and until his successor is ·elected and has qualified;

"Now, Therefore, if the said William J. Norby shall faithfully and impartially, in all things, during his continuance in office, perform the duties thereof without fraud, deceit or oppression, and pay over without delay to the officer entitled by law thereto all moneys which shall come into his hands by virtue thereof, then this obligation shall be void, otherwise to remain in full force and effect."

By the express terms of the bond appellant was liable for any shortage (covered by the bond), arising during Norby's term expiring August 1, 1925, "and until his successor is elected and qualified." His successor was not qualified until November 12, 1925. By the express terms of the bond, read literally, that date, which was the date of Norby's failure to pay over, was within the term covered by the bond.. The appellant contends, however, that such a bond containing such language continues in force only "until a reasonable time after the expiration of the statutory term" and that such a reasonable time is only a time "sufficient to give the public body a reasonable opportunity to choose a successor and have him qualified." It is contended that from August ·1, 1925, to November 12, 1925, was an unreasonable time. County of Scott v. Ring, 29 Minn. 398, 13 N. W. 181, 185, is cited by appellant to be decisive.

The facts in County of Scott v. Ring were these: One Ring had been elected county treasurer for a term expiring March 1, 1880. A statute (Gen. St. Minn. 1878, c. 8, § 144) provided that the term of a county treasurer should "continue for two years, and until a successor is elected and qualified." Other pertinent statutes (Gen. St. Minn. 1878, c. 8, § 146; c. 9, § 2) however, provided that if the duly elected successor to the office of county treasurer did not qualify by January 15th following election the "office

shall become vacant" and that in that event the board of county commissioners should appoint a county treasurer. Ring was elected to succeed himself but did not, by January 15, 1880, give the required bond for his second term. Nevertheless he continued in office until June 21, 1880. Between March 1, 1880, and June 21 he was guilty of certain defalcations. The surety on his bond was required by the judgment of the trial court to' make· good the loss sustained by the county, but the Supreme Court of Minnesota reversed. the judgment. The ground of reversal was this: That the various statutes fixing the county treasurer's term, declaring a vacancy in that office for failure to qualify, providing for the filing of such a vacancy, all entered .into and were a part of the contract (the bond), signed by the surety; that it was not the intention of the parties, in view of the statutes thus incorporated in the contract, that Ring should remain in office, having failed to qualify for his second term, after March 1, 1880, nor that the surety should be liable for Ring's delinquencies after that date.

But the ground stated was not alone sufficient for the reversal and the court added: "We do not say that that obligation [that is, the obligation of the bond] would not extend in any event beyond the first day of March. It has been decided, under statutes similar to our own, and under laws of incorporation declaring the continuance of a term of office to be for a definite period named, and until a successor should be elected and qualified, that an official bond of suretyship applied to the definite period of office named, and until such reasonable time thereafter as might be necessary for the purpose of providing a new incumbent by the appointed means. * * * We think the same construction of the statute and contract here would be correct. * * * " Adopting this principle as the correct one, the court held that only a showing of special circumstances justifying a delay beyond March 1st in the making of an appointment to fill the vacancy caused by Ring's. failure to qualify could at all extend the surety's obligation, and that, "In no event * * * should it be considered that the obligation extended beyond a reasonable time after March 1st for filling the office by appointment."

Appellee has sought to distinguish the Ring Case from the present case on the facts. But however different are the facts, the Minnesota Supreme Court did in the Ring Case declare the rule of law in that state as to the

duration of official bonds after a fixed term where the statute creating the office provides that the incumbent shall hold until his successor is elected and qualified and when the bond is similarly limited. The rule, so declared, is that liability on the bond extends only ·for such further time, after the fixed term, as is reasonably "necessary for the purpose of providing a new incumbent by the appointed means." No Minnesota decision has been cited and we have found none announcing any other rule. On this point appellee has been content to quote from 46 Corpus Juris, at page 1072 (but omitting to quote that part of the paragraph which we have italicized), as follows: "Where the bond is conditioned for the discharge of duties by the officer until a successor has been elected or appointed and has qualified, or where it is provided by law that an officer shall discharge the duties of his office until a successor has been elected or appointed and has qualified, the general rule is that, where an officer so holds over, the liability on his bond continues until such successor has qualified, although in some jurisdictions it is held that the liability extends only for such further time after the expiration of the term as is reasonably sufficient for the election or appointment and qualification of a successor. *The general rule does not apply where an officer, reelected or reappointed to succeed himself, has failed to give a bond for the new term.*"

It appears from the Ring Case that Minnesota is one of those jurisdictions which has adopted the minority rule. This bond, a Minnesota contract, was executed in the light of and is to be construed in accordance with that rule. Moreover, the general rule is subject to an exception within which this case falls. But whatever the general rule and whatever the exceptions to it, by the Minnesota rule the liability of the surety on the bond here extended after August 1, 1925, only for a reasonable time, a reasonably sufficient time within which a new bond should have been required and given.

■■ Just as in the case of County of Scott v. Ring, so here, the several statutes governing the filling of the office of treasurer, the term thereof, the time when a newly elected treasurer must qualify and give bond, the effect of failure to qualify and give bond, all entered into the contract as a part of it and are to be considered in determining what was the intention of the language used in the bond. Considering those statutes, can it be said the parties intended by the words "un-

til his successor is elected and has qualified" either an indefinite continuance of liability after the expiration of the fixed term or a continuance of liability for so long a time as from August 1, 1925, to November 12, 1925.

Section 2807 of the General Statutes of Minnesota for 1923 provides that school boards in independent districts shall on the first Saturday in August of each year choose a treasurer who shall hold office for one year and until his successor is elected and qualified. Section 2813 provides that all persons elected or appointed district officers shall, within ten days after notice of election or appointment, file with the clerk or secretary of the district his acceptance of the office and his official oath, or be deemed to have refused to serve. It further provides, however, that such filing of acceptance and official oath may be made at any time before action to fill the vacancy has been taken. Section 2834 provides that every treasurer shall give bond conditioned for the faithful discharge of his official duties, and that upon his failure to give bond or to give a new bond when required his office may be declared vacant and a new treasurer appointed.

Clearly it is the meaning of these statutes that a treasurer elected on the first Saturday in August for a one year term (as was Norby on August 1, 1925) shall within ten days qualify by filing his acceptance, taking the official oath and giving bond, and that failing therein another shall be elected to fill the vacancy either ipso facto resulting from such failure (section 2813) or which it is the duty of the proper officers to declare (section 2834). ·Between the day of election, on the first Saturday in August, and the time when the newly elected treasurer qualifies, there is a possible hiatus of ten days. Perhaps special circumstances might slightly lengthen the hiatus as the Minnesota Supreme Court pointed out in County of Scott v. Ring. This was the hiatus which the law contemplated when it provided in section 2807 that the treasurer shall hold office for one year and "until his successor is elected and qualified." And this was the hiatus which was contemplated by the parties to the bond when they provided in it that whereas Norby "had been elected for the term of one year from and after August 1, 1924, and until his successor is elected and qualified" the obligation of the bond should remain in full force and effect "during his continuance in office." It is to be noted in this connection that the premium charged and paid for the bond, as the record shows, was upon the the-

ory that the obligation assumed was for one year. Certainly the parties to this bond did not intend that for one. annual premium of fifty dollars the surety would be bound not only for one year but for one year and three months, or for two years or for ten years, or for any other period, beyond the time fixed, during which the proper authorities might fail to do their duty under the law by declaring a vacancy in the office of treasurer, filling that vacancy, and requiring a new bond.

We have not overlooked the fact that this bond was executed November 3, 1924. It need not, however, be decided whether it was retrospective to August 1, 1924. In any event, termination of liability under it is to be determined by the construction given the language, "for the term of one year from and after the 1st day of August, 1924, and until his successor is elected and has qualified." The obligation assumed terminated when the period intended to be included by the phrase "until his successor is elected and has qualified" came to an end. Appellee does not contend otherwise.

We hold as a matter of law that the bond sued on here was not in force on November 12, 1925.

Since there was no showing of any failure on the part of Norby to pay over funds prior to that date, it follows that the judgment below should be, and it is, reversed.

BOOTH, Circuit Judge (dissenting).

I find myself unable to concur in the majority opinion. The principal question in the case is as to the construction of the bond contract entered into by the surety company November 3, 1924, as surety on the bond of Norby as school treasurer. The pertinent provisions of the bond are set out in the majority opinion. There is, of course, no dispute that relevant statutory provisions enter into such a contract. The suggested statutory provisions are set out in the margin.[1]

Norby was elected school treasurer on the first Saturday in August, 1924, in accordance with section 2807, but he did not file his bond until November 4, 1924. He was re-elected on the first Saturday in August, 1925, but did not file his bond for that term until November 12, 1925. On the last-mentioned date, he failed to turn over to himself, as his own successor, the full amount belonging to the school funds on that date.

In August, 1926, one Hanson was elected to succeed Norby. Hanson filed his bond November 8, 1926. Shortly after that date, Hanson made demand on Norby for the amount then belonging to the school funds, but Norby failed to turn it over.

There were thus two defalcations by Norby: The first in November, 1925; the other in November, 1926; the latter included funds other than those included in the first.

The present suit pertains to the defalcation of November, 1925, and was brought on the bond filed November 4, 1924. The trial court held that the surety company was liable.

1. The majority opinion reversing the trial court is based upon the theory that section 2813 calls for the filing of a bond by the school treasurer within ten days after his election, and that in the case at bar, failure on the part of Norby to file the bond within

---

[1] Section 2807, General Statutes 1923, as amended (Laws 1925, c. 124): "Within ten days after the election of the first school board in independent districts, and annually thereafter on the first Saturday in August, or as soon thereafter as practicable, the board shall meet and organize by choosing a chairman, a clerk, and treasurer, who shall hold their offices for one year, and until their successors are elected and qualified. They may also elect a superintendent for such a term of service as the board may determine not to exceed a term of one year. He shall be ex-officio a member of the board, but not entitled to vote therein."

"2813. *Acceptance of office.*—All persons elected or appointed district officers shall, within ten days after notice of such election or appointment, file with the clerk or secretary of the district his ac-

ceptance of the office and his official oath, or be deemed to have refused to serve, but such filing may be made at any time before action to fill the vacancy has been taken."

Section 2761, General Statutes of 1913, as amended (Laws 1925, c. 69): "Every school district treasurer shall give bond to the state in a sum equal to twice the amount of money that will probably be in his hands at any time during any one year of his term, the school board to fix the specific amount of said bond, and said bond to be approved by the board and filed with the clerk, conditioned for the faithful discharge of his official duties. Provided, however, that if said bond so furnished by the treasurer be that of a surety company authorized to do business in Minnesota then the amount of such bond shall be equal to the amount of money that will probably be in his hands at any time during any one year of his term, the specific amount of such bond to be fixed by the board. The school board may at any time by a majority vote require the treasurer to give a new or an additional bond, and upon his failure to furnish same within a reasonable time after notice, the board shall declare the office of treasurer vacant. Any bond hereunder, before approval by the school board, shall be approved as to its form by the public examiner, county attorney or an attorney designated by the school board."

Vacancy Statute

"6953. *Vacancies.*—Every office shall become vacant on the happening of either of the following events, before the expiration of the term of such office: * * *

"6. His refusal or neglect to take the oath of office, or to give or renew his official bond, or to deposit or file such oath or bond within the time prescribed."

that time created a vacancy in the office; and a vacancy having thus been created, that the case of County of Scott v. Ring, 29 Minn. 398, 13 N. W. 181, determines that liability on the part of the surety on the bond no longer existed.

In my judgment, the failure to file a bond within the ten days limited for filing acceptance and the oath of office resulted not in a vacancy but in a hold-over; and the Ring Case, therefore, is not applicable, since the statutes relevant in that case expressly created a vacancy, while the statute relevant to the case at bar did not, in my judgment, do so either by express words or by implication. The bond of the incumbent in office (Norby), in my judgment, continued in force by its express terms until the filing of his second bond November 12, 1925.

In the absence of constitutional or statutory provisions expressly creating vacancies, the Minnesota courts favor the rule that the present incumbent holds over until his successor is elected and qualified. Taylor v. Sullivan, 45 Minn. 309, 47 N. W. 802, 11 L. R. A. 272, 22 Am. St. Rep. 729; State ex rel. v. Weber, 96 Minn. 422, 105 N. W. 490, 113 Am. St. Rep. 630. It may be that the court, in these two cases, overlooked a provision of the Constitution of the State of Minnesota and, therefore, reached an erroneous conclusion; yet the opinions indicate the views of the court on the assumption that there were no constitutional or statutory provisions expressly creating a vacancy.

2. The majority opinion appears to hold that Norby was elected to the office of school treasurer about August 1, 1924, but that a vacancy occurred in the office about August 10, 1924, by reason of his failure to file his bond, and that this vacancy continued until November 12, 1924, when Norby filed his bond; that upon the filing of the bond, Norby, in some way not clearly explained, filled the vacancy theretofore existing and again became school treasurer.

The same situation occurred again in 1925 and in 1926. Norby was re-elected school treasurer in August of 1925. He did not file his bond until November 12, 1925. Hanson was elected school treasurer in August, 1926. He did not file his bond until November 8, 1926.

If the majority opinion is correct, a vacancy again occurred in the office about August 10, 1925, and continued until November 12, 1925, when Norby, upon filing his bond, again filled the vacancy and became school treasurer; and a third vacancy occurred about August 10, 1926, and continued until November 8, 1926, when Hanson filed his bond.

I cannot agree with this holding. It seems to me that the statute never contemplated such a result as leaving a hiatus in the office of several months each year; and that a construction of the statute which leads to such a result is unreasonable and must be wrong. Clearly such a construction of the statute and such a situation were not in the mind of the surety company when the bond was executed in November, 1924; or when the second bond was executed in November, 1925; or when Hanson's bond was executed in November, 1926. The recitals and provisions of the bonds plainly indicate to my mind that the parties thereto proceeded on the theory that Norby was elected to the office of school treasurer in August, 1924, and that no vacancy occurred thereafter, but that he was holding over as treasurer when the second bond was executed in November, 1925, and continued to hold the office until November, 1926, when Hanson filed his bond.

The evidence shows that the delay in the execution and filing of the bonds was not an unusual one, and such delays were well known to the surety company.

The trial court found as a fact: "That one William J. Norby was the duly elected, qualified and acting treasurer of the plaintiff school district during the times hereinafter referred to." The times referred to ran from November 3, 1924, to November 10, 1926. In my opinion, there was substantial evidence to sustain the finding.

The holding of the majority opinion that there was a vacancy from about August 10, 1925, to November 12, 1925, is, in my opinion, not warranted either as a finding of fact or as a conclusion of law.

3. The parties themselves have construed a similar bond contract as covering a similar hold-over period. As above stated, another defalcation in this same office occurred in November, 1926. The last yearly term of Norby had expired in August, 1926. The last bond of Norby had been given in November, 1925. Yet the surety company paid the bond, clearly showing that the parties construed the bond contract as covering a hold-over period, until a successor was elected and had qualified.

I am of the opinion that liability existed on the part of the surety company in the case at bar, and that the judgment should be affirmed.