# VILLAGE OF HALLOCK v. OSCAR JORGEN PEDERSON AND ANOTHER.[1]

No. 29,230.

August 4, 1933.

*Doherty, Rumble, Bunn & Butler,* for appellant.

*P. H. Konzen, John Matt Brendal,* and *A. D. Bornemann,* for respondent.

*DIBELL, Justice.*

Action to recover of the defendant Pederson, the treasurer of the village of Hallock, in Kittson county, and of the defendant National Surety Company, the surety on his official bond, the amount for which the treasurer failed to account to the village. There was a judgment for the plaintiff against both defendants in the sum of

[1]Reported in 250 N. W. 4.

470

$7,109.31. The defendant surety company appeals. The defendant Pederson does not appeal.

■ The defendant surety company executed a bond in the sum of $10,000 which recited that the defendant Pederson was elected village treasurer

"for a term of one year from the 6th day of April, A. D. 1925, and until his successor is elected and qualified, and is about to enter and qualify upon the duties of said office.

"Now, Therefore, if the said Oscar Jorgen Pederson shall faithfully and impartially in all things, during his continuance in said office, perform and discharge the duties thereof without fear, favor, fraud, deceit or oppression and render true account of and properly apply all moneys and property of every kind that shall come into his hands by virtue of his holding said office and pay over and deliver such moneys and property without delay to the officer entitled by law thereto, then this obligation shall be void, otherwise to remain in full force and effect."

This was substantially in compliance with 2 Mason Minn. St. 1927, § 9687.

The statute, 2 Mason Minn. St. 1927, § 1841, provides that the council of any village or of any city of the fourth class under certain conditions may designate a legal depository; and, upon compliance therewith, there is no personal liability upon the treasurer. It reads:

"The council of any village, or of any city of the fourth class, may designate as a depositary of city or village funds such national, state, or private banks as it may deem proper. Each shall give bond to the municipality, in at least double the amount authorized to be deposited therein, to be approved by the council, conditioned to repay all sums deposited therein upon proper demand therefor, and for the performance of such other duties as the council may require. And such council from time to time may require the city or village treasurer to deposit all or any part of the public funds in his hands in such banks, and to withdraw the same when so

directed. No such deposit shall be made for a time extending beyond the term of the council then in office, and all the terms and conditions of deposit shall be set forth in the resolution designating the several depositaries, which resolution shall be filed with the clerk or recorder. The treasurer shall not be liable on his bond for any money so deposited by direction of the council, and lost through the failure, bankruptcy, or other default of such bank. All interest accruing upon such deposits shall belong to the city or village."

On April 7, 1925, at the request of Pederson the following motion was made and carried by the village council:

"On motion duly made, seconded and carried, the First National Bank of Hallock, and Kittson County State Bank, Hallock, Minn., were designated as depositaries of the village of Hallock."

Neither of the banks gave a bond.

The defendant Pederson testifies as to the following conversation:

"Shortly after the St. Vincent bank failed I got nervous as to the responsibility for the money intrusted me as village treasurer, and I went to Mr. Konzen and asked him what to do to protect myself in case anything should happen to any of our banks. Mr. Konzen, he stated that I should go before the village council and have them designate the banks as a depository, and that all liability on me— and that no liability would be on me as treasurer then.

Q. "And Mr. Pederson, pursuant to that conversation that you had with Mr. Konzen and in connection with his recommendations, did you request the council to pass a resolution designating certain depositories?

A. "I went before the council at one of their meetings in 1924— I think it was their August meeting—and asked them to protect me in case of any bank failure should happen.

Q. "Were you assured by the council at that time that such proceedings would be taken?

A. "They passed a resolution to that effect."

It was evident, as found by the court, that there was not such compliance with 1 Mason Minn. St. 1927, § 1841, as to relieve the

defendants. The contemplation of the statute is that if the treasurer is relieved of liability there shall be a bond by the depository banks which would save the municipality from loss. In a particular instance a depository bond might be the better, and it might be more easily determined whether the bond at any particular time was sufficient. The trial court expresses the view that the treasurer was entirely sincere and thought he was saved from personal liability; and that the officers of the village treated with him as if there were a proper depository bank with proper sureties and safeguards. In fact there are a few things that seem to indicate that that was the understanding; for instance, the treasurer made some of the deposits under direction of the common council in the bank. While a defense is sought to be made that there was an order for deposit with the banks, it is not very seriously claimed that there was one so complying with the statutes as to relieve the defendants. When the bank closed on October 12, 1925, things seemed to have gone on about as usual. Pederson continued as treasurer. The amount owing from the bank was ascertained, and on February 16, 1926, shortly before the expiration of the official year, it was found that the net amount on deposit, less two small offsets and including interest items, was $9,677.13. No one seems to dispute this, and the president and clerk of the village certified that Pederson was its duly elected and qualified treasurer and authorized to make the necessary proof of claim, which he did make. On May 22, 1926, the first ten per cent dividend on the indebtedness of the bank was paid to Pederson and applied to the village; on April 11, 1927, a second dividend of $967.71 was paid and applied to the village; on October 5, 1929, a third dividend of $967.71 was paid; and on June 27, 1931, a fourth dividend of $967.71 was paid, making a total of $3,870.84 which the village received from the bank. Pederson apparently being out of office at the time of these two latter payments, they came through the village treasury. This left a total, according to the village treasurer, of $5,806.29 owing from the treasurer and, as it claims, from the surety.

Pederson's bond was conditioned that he safely keep and pay over all moneys which came into his hands. His obligation was not

merely to be careful in selecting a bailee. His obligation was a direct contractual one to pay the money which came into his hands to the village or his successor as its treasurer. Co. Commrs. of Hennepin County v. Jones, 18 Minn. 182 (199) ; Co. Commrs. of McLeod County v. Gilbert, 19 Minn. 176 (214) ; Co. Commrs. of Redwood County v. Tower, 28 Minn. 45, 8 N. W. 907; Board of Education v. Jewell, 44 Minn. 427, 46 N. W. 914, 20 A. S. R. 586; State v. Bobleter, 83 Minn. 479, 86 N. W. 461; N. P. Ry. Co. v. Owens, 86 Minn. 188, 90 N. W. 371, 57 L. R. A. 634, 91 A. S. R. 336; School Dist. No. 1 v. Aiton, 173 Minn. 428, 217 N. W. 496; American Surety Co. v. Independent Sch. Dist. No. 18 (C. C. A.) 53 F. (2d) 178, 81 A. L. R. 1. Pederson was directly liable on his contract and not as a bailee.

■ The amount of the judgment includes interest to be paid at the rate of six per cent per annum upon all sums in which Pederson was in default, though no demand was made from the time Mr. Johnson, his successor, qualified, about April 1, 1928, to the time of the commencement of this suit on March 2, 1931. It is the claim of the surety company that it was not liable for interest until demand was made. There is much reason in support of such a holding. In City of Dickinson v. White, 25 N. D. 523, 538, 143 N. W. 754, 760, 49 L.R.A.(N.S.) 362, the court upon a rehearing said:

"We think the weight of modern authority, as well as the better reason, allows interest as against sureties on official bonds only from the date of notice to the sureties of the breach, or a demand on them to make good such breach. We find support for this in the following authorities, as well as others not cited: 1 Brandt, Suretyship & Guar. (3d ed.) § 126, and cases cited; Murfree, Official Bonds, § 689; 16 Am. & Eng. Enc. Laws, 1043 and cases cited; 22 Cyc. 1543, and cases cited; Frink v. Southern Exp. Co. 82 Ga. 33, 8 S. E. 862, 3 L. R. A. 482; Curtis v. United States, 100 U. S. 119, 25 L. ed. 571. See also valuable note to Griffith v. Rundle, 55 L. R. A. 381, where the modern rule is stated and the authorities collated. See Folz v. Tradesman's Trust & Sav. Fund Co. 201 Pa. 583, 51 Atl. 379; Trumpler v. Cotton, 109 Cal. 250, 41 Pac. 1033,

1036; Pennsylvania Co. v. Swain, 189 Pa. 626, 42 Atl. 297; Thomas Laughlin Co. v. American Surety Co. 51 C. C. A. 247, 114 Fed. 627; American Surety Co. v. Lawrenceville Cement Co. 110 Fed. 717.

"The evidence fails to disclose any notice to appellant of such breach or any demand upon it to respond prior to the commencement of this action. Interest should therefore be computed only from the date the action was commenced."

There are other cases of like effect. State ex rel. Lee v. Martin, 188 N. C. 119, 123 S. E. 631; Clark County v. Howard, — S. D. —, 237 N. W. 561.

The case should be remanded. It may or may not be that there should be a reduction depending upon the question whether a demand was made.

The plaintiff claims that it made demand. The court so finds. The defendant challenges the finding. We do not find evidence in support of it, and the plaintiff cites none. If there is such evidence which we have been unable to reach, it can be corrected on a motion for reargument; but if there is such evidence and the court should think there be an opportunity to produce it that can be reached on motion. The judgment now stands reversed for further proceedings in the court below not inconsistent with this opinion, and the case is remanded accordingly.

Judgment reversed and remanded.

*STONE, Justice,* took no part.

ON APPLICATION FOR REARGUMENT.

On August 18, 1933, the following opinion was filed:

*PER CURIAM.*

The plaintiff and the defendant each move for a reargument. In addition the plaintiff asks an order for judgment for $5,662.05 with interest at six per cent from October 2, 1931, the date of the commencement of the action; that is, in effect that the judgment be reduced to such amount. The motion is in recognition of the holding of the opinion as to interest.

Both motions are denied. The plaintiff abandons its claim made in its brief that the record shows that the surety company had notice; and it makes no claim that it can produce evidence of such notice.

Both parties proceed upon the theory that the reversal of the judgment results in a new trial. But not so. There must be a reference to the opinion to determine the result of a reversal of a judgment. Here there was a specific direction for further proceedings not inconsistent with the opinion. Upon the record, since the plaintiff no longer claims notice, a new trial should not be had. The record shows the amount of permissible recovery. The trial court on motion should amend the findings and conclusions and judgment. The judgment by the amendment should be reduced to the proper amount; and, if the plaintiff's computation of $5,662.05 is correct, it should be accepted. The original judgment will then stand as reduced. It is true that this court could have entered judgment, but doing so would have prevented an assertion by the plaintiff of its claim that the surety had notice as shown by the record or that notice could be proved. It is now with the trial court. The controversy will be finally settled upon the motion to amend.