TOWN OF MONROE, Respondent, v. BUSS, et al, Appellants.

(261 N. W. 200.)

(File No. 7765.  Opinion filed June 8, 1935.)

C. H. McCay, of Salem, for Appellants.
Everett A. Bogue, of Parker, for Respondent.

RUDOLPH, J. The defendant Herman H. Buss was appointed treasurer of the town of Monroe on May 31, 1928. The defendants Henry H. Buss and Ben Visser are sureties on the official bond. At the time Herman Buss was appointed treasurer the town of Monroe had on deposit in the Bank of Monroe certain moneys on time deposit and for which certificates of deposit had been issued. After his appointment, the treasurer, Buss, continued these time deposits in the Bank of Monroe by renewing the certificates in the original amount and turning over to the city the interest received. In addition to the deposits in the Bank of Monroe represented by the certificates, the treasurer, Herman Buss,

kept his checking account as treasurer in said bank. The governing body of the town of Monroe had never designated a depositary, as required by section 6344, Rev. Code 1919. Finding of fact No. 5 of the trial court is as follows: "That no formal proceedings of any kind were ever taken by the town board to designate said Bank of Monroe as a depository, and neither the town board nor the said defendant, Herman H. Buss, required the said Bank of Monroe to furnish depository bond or give security for the deposits in said bank though at all times said town board knew and had knowledge of the fact that the funds belonging to said Town of Monroe were on deposit in said Bank of Monroe and had knowledge of the fact that said certificates of deposit representing part of the funds belonging to said municipality were being renewed from time to time as they matured and became payable and that said town received the interest thereon."

The Bank of Monroe maintained its legal reserve until August 21, 1931, which reserve thereafter from day to day varied from 16 per cent to 11 per cent. On September 19, 1931, the bank closed with a cash reserve of 11 per cent. The defendant Buss had no knowledge of the failing condition of the bank until a few hours prior to its closing, when he was informed by the bank's officers that the bank was about to close, at which time he withdrew from his checking accounting $500, which account at the time totaled $598.15. There remained in the bank at the time it closed, therefore, $98.15 in checking account, and the time certificates of deposit which totaled $6,659. This action was brought against the treasurer and his bondsmen to recover the amount on deposit in the bank at the time it closed. The court allowed a recovery and concluded, as a matter of law, that the defendant Herman H. Buss was guilty of negligence in not withdrawing the balance of the checking account in the sum of $98.15; that he was guilty of negligence in not requiring the bank to furnish a depository bond or other security for the money on deposit; that he was guilty of negligence in renewing the time certificates of deposit and thereby placing the money out of the reach or control of the town for a period of time stated in the certificates without requiring a bond to secure the same. This appeal is taken from the judgment entered in the court below.

This court, in the case of Board of Education v. Whisman,

56 S. D. 472, 229 N. W. 522, 530, clearly stated the duty devolving upon a custodian of county, municipal, township, or school funds, where the governing body has failed to designate a depositary, as follows: "Fifth, If the law has provided no one other than the custodian whose duty it is to designate a depositary, or if the person or board authorized to designate a depositary has not acted in that regard, then it becomes the duty of the custodian himself to select as a depositary for said funds some bank within the state of South Dakota; in other words, by chapter 335, Laws 1921, there is in effect added to the existing official duties of the custodian the duty of acting as a designating authority to select a depositary in cases where such authority is not placed elsewhere, or, if placed elsewhere, has not been exercised. Sixth, in performing this additional function thus cast upon his office, the custodian, as in other duties of his office, is obligated to act in good faith and with prudence; in particular he must exercise good faith and due prudence in his investigations to inform himself as to the condition of the depositary he has in mind before he selects it for deposits therein, and he must continue to exercise good faith and due prudence to keep himself informed of its condition from time to time, so long as he has deposits therein. Seventh, if the custodian is not chargeable with lack of good faith or due prudence in the selection of a depositary or in continuing his deposits therein, he is not liable if a loss of funds results by failure of the depositary."

It was further held in the Whisman Case that it was not per se either lack of good faith or lack of due prudence for a custodian of funds, not otherwise guilty of bad faith or lack of prudence, to select as a depositary for such funds a state bank in South Dakota which had complied with the provisions of the Bank Guaranty Fund Law without requiring from such bank further or other security as a depositary. It should be noticed in this case that there is no contention that the defendant Herman H. Buss was guilty of bad faith or lack of prudence other than his failure to require from the Bank of Monroe security for his deposit. The principal question, therefore, presented in this case is whether, since the repeal of the Bank Guaranty Fund Laws, it is either per se lack of good faith or lack of due prudence for a custodian of funds, when the governing body has failed to designate a depositary, to deposit these funds in his possession in a state bank in the state of

South Dakota without requiring of that bank a bond or other security as a depositary.

■ ■ A preliminary question is presented due to the fact that the defendant, Buss, retained in the form of time certificates of deposit certain deposits in the Bank of Monroe which came into his hands at the time of his appointment as treasurer. Chapter 185, Laws 1927, provides as follows: "Section 1. That all funds of every kind and character, including moneys, credits and other assets belonging to any county, municipal, township, school district or other public corporations or irrigation district, except the state of South Dakota, shall be by the treasurer deposited in a bank or banks within the state of South Dakota, which bank or banks shall be designated as follows: For county funds, by the County Commissioners; for municipal funds, by the board of trustees, or by the mayor and common council, or by the board of commissioners; for township funds, by the board of supervisors; for school funds, by the school board; for funds of irrigation districts, by the board of directors of such district; for funds of other public corporations, except the state of South Dakota, by the governing board thereof. Provided, that if no depository is designated, then the treasurer shall designate a bank or banks as a depository for such public funds. The deposit of such public funds as herein designated, shall relieve the treasurer or auditor of all county, municipal, township, school, irrigation district, and other public corporations, except the state of South Dakota, from personal liability for loss of such deposited funds through the insolvency or failure of such depository while deposited therein."

This statute is in accord with the rule announced by this court in the case of Edgerton Independent Consolidated School District v. Volz, 50 S. D. 107, 208 N. W. 576, which case was decided under the then existing statute, being chapter 335, Laws 1921. While the Whisman Case, supra, was decided under facts which arose prior to the enactment of the above-quoted 1927 law, nevertheless we are of the opinion that the rule therein stated, relative to the duty of the custodian of public funds to act in good faith and with due prudence in selecting a depositary bank, inheres in the 1927 law. We are satisfied that the treasurer, Buss, brought himself within the meaning of the above statute when he renewed the certificates of deposit in the Bank of Monroe and continued to carry the money

represented thereby as time deposits in that bank. In other words, we are satisfied that, under the facts here presented, this money represented by these time certificates of deposit was "deposited" in a bank within the state of South Dakota within the meaning of said chapter 185. See City of Sisseton v. Surety Co., 50 S. D. 205, 208 N. W. 982. Whether by this deposit the treasurer, Buss, could or did place the money out of the reach or control of the town for the period of time stated in the certificates, we expressly refrain from deciding. The extent to which this decision goes is to say that this deposit by Buss was within the meaning of the above statute, and relieved him from the liability therefor upon the failure of the bank, provided he acted in good faith and used due prudence in selecting the depositary and continuing the deposit therein.

■■ We come now to the principal question involved. That is, whether it was per se lack of good faith or lack of due prudence for the treasurer, Buss, to deposit the money of the town in the Bank of Monroe without requiring either a bond or other security from this depositary. Respondent contends, and in this contention was apparently sustained by the trial court, that the duty of the treasurer in the event it befalls upon him to select a depositary is commensurate with the duty of the town board under the provisions of section 6344, Rev. Code 1919, which requires that when the depositary is designated by the governing body "the governing body shall require each such depositary to furnish * * * security * * * for the safekeeping and repayment of all money deposited." In this contention of respondent we are unable to agree. The statute (chapter 185, Laws 1927) which by its terms made it the duty of the treasurer, Buss, to designate a depositary in the event that the town board fails so to do is silent with regard to any terms or conditions that Buss should impose upon the designated bank prior to a deposit of funds therein. Aside from some requirements contained in a statute, we do not believe that it can reasonably be said that the failure of a custodian of public funds to require security therefor from a depositary bank is per se either lack of good faith or lack of prudence. Under the rule announced in the case of Board of Education v. Whisman, supra, the regularity and good faith of the treasurer, Buss, in selecting the Bank of Monroe as depositary is presumed, and that presumption continues until proof overcoming it is presented. The only attempt in this case to

overcome this presumption was to show that the treasurer, Buss, had not required security. This fact, standing, alone, cannot, in our opinion, in the absence of a requirement by the statute making it mandatory upon Buss to require security, overcome this presumption of regularity and good faith. The treasurer, Buss, continued this account in the Bank of Monroe as it had been continued for some time before he took office. This was done with the knowledge and apparent approval of all of the members of the town board, and the town, knowing of the deposits and accepting the interest from these deposits, at least gave its tacit approval to the manner and mode in which the treasurer, Buss, was acting as custodian of its funds. Under these circumstances, to say that the single omission of Buss in not requiring from the bank security for the deposit is sufficient to overcome the presumption of regularity and good faith which attaches to all of Buss' acts, we do not believe would be justified.

Respondent gives considerable weight to the statement of this court in the Whisman Case relative to the failure of a custodian of public funds during the days of the Bank Guaranty Law, upon whom devolved the duty of designating a depositary, to fail to require security from a national bank designated by him as such depositary. In that case this court expressly refrained from passing upon the question of whether the failure to require security from a national bank during the days when the Bank Guaranty Law was in effect in South Dakota, would establish per se either lack of good faith or due prudence. The most that was said was that the failure under those circumstances to require security from a national bank might be taken into consideration with other facts and circumstances to determine the ultimate question. In this case the failure to require security stands alone. There are no other facts and circumstances established from which bad faith or negligence might be inferred. The only other facts established, on the contrary, tend to prove good faith on behalf of the treasurer, Buss.

We refer again to the fact that the treasurer, Buss, renewed from time to time the certificates of deposit which came into his hands when he was appointed treasurer. We have heretofore held that whether the treasurer could, by renewing these time certificates of deposit, thereby place the money out of the reach or control of the town for the period of time stated in the certificates

was not material in deciding whether or not this constituted a "deposit" within the meaning of the 1927 statute. Conceding that the treasurer, Buss, could not, by renewing the time certificates of deposit, place the money out of the reach or control of the city for the time specified in the certificates, then and in that event the deposit would be nothing other than a demand deposit so far as the town is concerned, and what has been said heretofore regarding the good faith or due prudence of the treasurer in selecting the depositary and depositing the money therein would govern. On the other hand, if the treasurer, Buss, could, by renewing these time certificates of deposit, place the money out of the reach or control of the city during the time stated in the certificate, and did so without requiring security therefor, we are convinced, under the facts here presented, that the depositing of the money in the bank in this form bears no relation to the fact that a loss was sustained by the town, and therefore is not material in deciding the liability of the treasurer, Buss. Buss was informed by the officers of the bank a few hours before the bank closed of its imminent closing and any withdrawal of money from the bank by the treasurer, Buss, thereafter would constitute an unlawful preference. Smith v. McCowan, 60 S. D. 504, 244 N. W. 891. There is nothing in this record to show that, prior to receiving his knowledge from the officers of the bank, Buss had any suspicion that the bank was in an insolvent or failing condition, or that prior thereto he or the town board had any intention or desire to withdraw any of the money on deposit in the bank therefrom. Obviously under these circumstances the fact that part of the money was in the bank on time deposit bears no relation to the loss sustained. Simultaneously, with Buss acquiring knowledge which would make it negligent for him to thereafter leave any deposit in the Bank of Monroe without having the same adequately secured, also came the knowledge which would make any withdrawal thereafter of either time or demand deposit an unlawful preference. It might be that under circumstances different than those presented here it could reasonably be said that a loss was sustained by a public body because a custodian of public funds placed those funds in a bank in the form of a time deposit without requiring security therefor, but our present concern is only with the facts as they appear in this particular case.

In this same connection the trial court concluded that the

treasurer, Buss, was guilty of negligence in failing to withdraw $98.15 of his checking account in said bank. From what has been said above, the withdrawal of this money after the treasurer, Buss, was informed that the bank was about to close would constitute an unlawful preference under the decision in the McCowan Case, and his failing to withdraw the money cannot, therefore, be deemed negligent.

Respondent relies to some extent upon two recent decisions; one in Minnesota, Village of Hallock v. Pederson, 189 Minn. 469, 250 N. W. 4, and the other in Nebraska, South Sioux City v. Mullins, 125 Neb. 410, 250 N. W. 549. Neither Minnesota nor Nebraska has statutes similar to our chapter 185, Laws 1927, and these decisions are for this reason not helpful.

The judgment appealed from is reversed.

All the Judges concur.